## MacMackin Estate.

Argued January 9, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*George H. Class,* with him *Romain C. Hassrick* and *Lindenmuth & Class,* for appellant.

*W. Bradley Ward,* with him *Joseph D. Calhoun* and *Lemuel B. Schofield,* for appellees.

OPINION BY MR. JUSTICE JONES, March 24, 1947:

This appeal from an Orphans' Court decree was originally taken jointly by Northern Baptist Convention and by Trustees of the Baptist City Mission, two separate and distinct beneficiaries under the will with

which this case is concerned. Counsel for the appellees plainly pointed out in their brief the invalidity of the joint appeal as well as the procedural corrective open to the appellants in the circumstances (see *Schuetz's Estate*, 315 Pa. 105, 109, 172 A. 865) with the result that, on the day the appeal was called for argument, the appellants caused it to be discontinued of record as to the Trustees of the Baptist City Mission but permitted it to stand as the appeal of Northern Baptist Convention.

Bernard MacMackin died testate on February 12, 1916, resident in Delaware County, Pennsylvania, his last will and two codicils thereto being duly probated before the Register of Wills for that county. By the testamentary writings, the decedent devised and bequeathed his residuary estate to his executors in trust for the purpose, inter alia, of paying out of income, first, the sum of $5,000 per annum to the testator's widow for life; second, $1,200 per annum to his son to be increased, in the discretion of the trustees, to $2,000 for life, upon the son's reaching the age of thirty, and, finally, the payment annually of relatively modest sums to certain collateral relatives. A further clause of the trust provisions of the will specified that "Should any income remain after paying the foregoing *annuities* . . ." (emphasis supplied), the trustees were to accumulate $1,000 of such income and pay it over to a named charitable organization which was done. The next clause likewise directed that any other excess income accumulated should be paid, in the order named and in the amounts therein mentioned, to ten charitable organizations up to a total of $12,000. Such payments were made in full from income so accumulated in the past. The will then provides that "After the foregoing *annuities* cease and the foregoing payments have been made . . ." (emphasis supplied), the sum of $5,000 shall be paid to a named charitable organization. That has not been done, all of the annuities not yet having ceased. The next

clause of the will provides that "Likewise, after the *annuities* cease and the foregoing payments have been made . . ." (emphasis supplied), the trustees shall purchase real estate and erect thereon a house of worship. That provision has not yet been carried out for like reason as immediately above stated. Finally, the will gives the residue of the trust estate in remainder to Northern Baptist Convention, the appellant. In addition to the testator's widow and his son, seven collateral relatives, who are entitled to annual payments as beneficiaries under the testator's will, still survive.

Because the net income from the trust in later times has proved insufficient to pay in full all of the enduring "annuities" (although the annuitants in natural course have progressively grown, and continue to grow, fewer), the trustees reduced the amount of the testamentarily specified annual payments by twenty-five per cent, as of September 1939, and by an additional twenty-five per cent, as of September 1944, and made distributions accordingly. The current amounts of the annual payments latterly have thus been fifty per cent of the respective sums called for by the will except in the case of the testator's widow to whom $5,000 has been paid annually without abatement.

In due course, the trustees filed a further accounting of the estate in their keeping. At the audit thereof in the court below, Nellie R. MacMackin, one of the "annuitants", asserted a right to be reimbursed out of corpus for the deficiencies in the amounts of the annual payments theretofore made to her by the trustees. The learned auditing judge sustained the claimant's contention and directed the trustees to reimburse her accordingly. To that adjudication, the Trustees for the Philadelphia Baptist City Mission and Northern Baptist Convention each filed exceptions. Thereupon the court below reopened the audit for the purpose of hearing and adjudicating like claims on the part of the remaining "annuitants". Subsequently, the court dismissed the exceptions

and confirmed its previous ruling by holding that all "annuitants" were entitled to reimbursement from principal for the deficiencies in the amounts of the annual payments. The Schedule of Distribution filed in conformity with the adjudication shows a balance of principal on hand amounting to $202,023.45 and the transfer of $3,185.64 from principal to income in order to make good the prior deficiencies in payment of the annual sums specified by the will. From that decree the instant appeal was taken. The appellees are the testator's widow and other surviving "annuitants" under his will.

The learned auditing judge concluded, and the court en banc confirmed, that the annual payments severally provided for by the testator's will for his wife, his son and a considerable number of other relatives were intended to be, and as a matter of legal construction are, annuities,—payable, therefore, from corpus to the extent that income proves insufficient for the purpose. The interpretation thus placed upon the will by the court below rests upon sound legal ground. First and most importantly, it accords with the meaning of the language which the testator employed and, consequently, discovers his true testamentary intent which, being also lawful, is to be given due effect: *Prime's Petition*, 335 Pa. 218, 222, 6 A. 2d 530.

The appellant, in ascribing error to the action of the court below in such regard, stresses and relies wholly upon the fact that, in making the bequests of the annual sums to the individuals named in the will, the testator spoke, in that connection, of payment "from the income" or "out of the income" of the trust estate. If that were the extent of the decedent's testamentary words and intendment with respect to the character of the bequests, it would at once have to be conceded that they carried with them no more than a right to participate *pro tanto* in distributions of income annually derived from the trust estate and that, therefore, they were not annuities in the strict legal signification of

that term. But, that is by no means all the will contains in material regard. After setting forth the bequests to individuals for life, the testator, upon proceeding to make disposition of possible excess income and, ultimately, of the trust corpus in remainder, specifically characterized the preceding bequests as "annuities", speaking, for example, as we have already seen, of any income remaining "after paying the foregoing annuities" and of the time "After the foregoing annuities cease",— to mention but two of several instances in which the testator so referred to the bequests payable annually to members of his family and to certain relatives. On the basis of the wording of the will we have, therefore, to determine how the testator really regarded the bequests and from what source or sources he intended them to be paid in full on the specified annual basis. The seeming conflict between bequests payable "out of income" and their defined status as "annuities" is to be resolved in accordance with the intent derivable from the will as a whole: *Calder's Estate,* 343 Pa. 30, 34, 21 A. 2d 907, *Brennan's Estate,* 324 Pa. 410, 413-414, 188 A. 160.

The testator's references to income in relation to the bequests could not have been intended to limit and restrict thereby the source of their payment. And, the weight of such references is considerably reduced by the testator's later and repeated descriptions of the bequests as "annuities". The rule in such regard was succinctly stated by the late Chief Justice MOSCHZISKER in *Brown's Estate,* 289 Pa. 101, 114, 137 A. 132, as follows: "In determining the general intent of a testator as shown by the devise or will, words first used may be explained and made plain by those subsequently employed". Why, then, did the testator mention payment from income? Merely because it was likely to constitute the source of payment. When the will was drawn, as well as at the time of the testator's death two years later, the income from the estate was more than ample

to take care of all the personal bequests of the sums to be paid annually. Indeed, the will made provision for a distribution of possible surplus income among ten charities,—a distribution that was actually made, *inter alia,* to the Baptist City Mission, one of the very exceptants below and, until the discontinuance herein first above-mentioned, a joint appellant in this case. That charity, having thus shared, in the lifetime of the personal legatees, in a distribution of income which, if retained by the trustees for future needs (see *Howell's Estate,* 180 Pa. 515, 519, 520, 37 A. 181), would have obviated any deficiency in the continued payment of the personal bequests from income, it came with rather poor grace for that particular volunteer to seek a result that would tend to distress beneficiary relatives of its own benefactor for no better purpose than to enhance the charitable remainderman's otherwise large windfall. In no event, is the payment of annuities from corpus, where necessary, inhibited simply because the testator was of the opinion that the income would be sufficient for the purpose: *Johnston's Estate,* 264 Pa. 71, 76, 107 A. 335.

The persons named as legatees in the will were the primary objects of the testator's bounty. The will, as well as the order of its beneficences, plainly so discloses. The testator, after first providing for the annual payments to his wife, his son, his niece, Nellie R. Mac-Mackin, and his wife's cousin, Elizabeth Callaghan, and her husband, Robert Callaghan, jointly, then directed that "All of the foregoing payments shall begin to accrue immediately after my death and may be made in quarterly payments or otherwise". As will be perceived, that direction was made wholly without specific regard to whether the estate would produce any income. Not only does the provision just quoted imply that the particular bequests therein referred to were to be annuities, but it also has similar import, although indirectly, in relation to the remaining personal bequests, all of which are couched in substantially the same dispositive lan-

guage as the bequests to the Callaghans and Nellie Mac-Mackin. Under the scheme of the will, the estate in remainder was given subject to the prior payment to the personal beneficiaries of the annual sums bequeathed them: see *Johnston's Estate,* supra, at p. 76. The only interpretation consistently to be drawn from the entire will is that the bequests were intended to be and, in legal effect, are annuities.

Such being the case, corpus may be invaded, when necessary, to supplement current income to the extent of producing a sufficient fund annually for the payment of the annuities bequeathed by the will. As was said in *Johnston's Estate,* supra, at p. 76,—"In the absence of an express restriction, or its equivalent, the corpus of an estate given subject to an annuity may be taken for its payment when the income proves insufficient for that purpose: see 3 Corpus Juris, p. 212; Smith v. Fellows, 131 Mass. 20". No such restriction here appears. On the contrary, the will impels the recognition of a clear intent on the part of the testator that his wife and son and other relatives should receive annually for their respective lives the sums bequeathed them. Here, as in *Elmore's Estate,* 292 Pa. 571, 573-574, 141 A. 478, the testator's "primary object appears to be to provide a life income for his [1] [and his wife's] nearest blood relations, thus putting them in a class by themselves and entitling them to first consideration in event of a deficiency of assets".

In *Gould's Estate,* 270 Pa. 535, 113 A. 552, cited by the appellant, the annuitant widow was dead when claim was made for deficiencies in the payment of her annuity upon a contention, moreover, opposed to a judicial testamentary interpretation that had stood unexcepted to for forty years. Nor is *Coane's Estate,* 310 Pa. 138, 165 A. 2, germane to the questions raised under the will here involved.

The decree is affirmed at the appellant's costs.

[1] The testator in *Elmore's Estate,* cit. supra, was a bachelor.