**William K. FRANK and Robert J. Frank, Executors under the Will of Tinnie K. Frank, Deceased, Plaintiffs,**

v.

**Stanley GRANGER, individually, and as Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, Defendant.**

**Civ. A. No. 10286.**

United States District Court
W. D. Pennsylvania.

Jan. 27, 1956.

498

Louis Caplan and Philip Baskin, Pittsburgh, Pa., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, M. Carr Ferguson, Dept. of Justice, Washington, D. C., D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This is a civil suit for the recovery of Federal estate taxes paid by the plaintiffs, William K. Frank and Robert J. Frank, executors under the will of their mother, Tinnie K. Frank, deceased, to the Collector of Internal Revenue at Pittsburgh, Pennsylvania. Plaintiffs seek to recover the sum of $59,092.76, with interest, which they paid on a deficiency assessment made by the Collector. The complaint was filed February 11, 1952. The crux of the issue to be decided is based on the averments in paragraph 9 of the complaint and answer. The case appeared on the non-jury list and when reached for trial, the parties agreed upon and introduced into evidence a written stipulation of the facts. In addition to the stipulation, plaintiffs offered the testimony of two witnesses and also introduced into evidence an exemplification of a record in the Orphans' Court of Allegheny County, Pennsylvania. The defendant bases his defense upon the facts as set forth in the stipulation.

There is thus presented for decision an actual controversy but based upon undisputed facts, leaving the issue to be decided one of law only. From the pleadings and oral and documentary evidence introduced, the major portion of which is the written stipulation of facts, I make the following

### Findings of Fact

1. The plaintiffs, William K. Frank and Robert J. Frank, are the duly qualified and acting executors under the will of Tinnie K. Frank, deceased.

2. At all times from January 1, 1943 to November 11, 1952, the defendant, Stanley Granger, was a duly qualified and acting Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania. The defendant was at the time this suit was filed, and has at all times since been, a resident of the Borough of Bridgeville, Allegheny County, in the Western District of Pennsylvania.

3. This is a suit of a civil nature arising under the laws of the United States of America and is brought for the recovery of internal revenue taxes collected from the plaintiffs by the defendant, Stanley Granger, Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania. The taxes involved in this suit are estate taxes and were assessed and collected under Title 26, Subtitle A, Chapter 3, Subchapters A and B, of the Internal Revenue Code, as amended; Title 26 U.S.C.A. § 800 et seq. The jurisdiction of this court is based upon Title 28 U.S.C.A. § 1340.

4. Tinnie K. Frank, the decedent above-named, a resident of Pittsburgh, Pennsylvania, died on June 1, 1945, leaving a last will and testament, dated December 8, 1938, with a codicil thereto dated October 30, 1943, which will and codicil were duly probated on June 11, 1945, and are now of record in the office of the Register of Wills for Allegheny County, Pennsylvania, in Will Book Volume 272, page 28.

5. In and by her said will, the decedent appointed the above-named plaintiffs, William K. Frank and Robert J. Frank, as the executors thereof. The said William K. Frank and Robert J. Frank duly qualified as such executors, and letters testamentary under the decedent's said will were issued to the said William K. Frank and Robert J. Frank by the said Register of Wills on June 11, 1945. At all times since June 11, 1945, the said William K. Frank and Robert J. Frank have been, and they now are, the duly qualified and acting executors under the decedent's said will.

6. On May 21, 1930, Isaac W. Frank, husband of the decedent, Tinnie K. Frank, executed a deed of trust in which he named the Bank of Pittsburgh, Na-

tional Association, his sons, William K. Frank and Robert J. Frank, and his son-in-law, S. J. Anathan, as trustees. A copy of the deed of trust is Exhibit "A" of the evidence and is referred to as the "Isaac W. Frank Trust of 1930."

7. Article 1 of the said deed of trust provides as follows:

"Said Trustees are authorized, empowered and directed:

"1. To collect, recover and receive the interest, income and dividends upon the said securities, moneys and investments, and, less the expense incident to the management of the trust:

"(a) To pay over annually in quarterly installments during my life the sum of Fifty Thousand Dollars ($50,000.00) to my wife, Tinnie Klee Frank, and should my wife survive me then after my death and during my said wife's life, the sum of Seventy-five thousand Dollars ($75,000.00) annually in quarterly installments to her, and the balance of said income during the life of my wife, and after her death all of said income, to my three children, namely, William K. Frank, Robert J. Frank and Bessie Frank Anathan, in equal shares for and during their respective natural lives."

8. Article 2 of the said deed of trust provides that the trust shall continue until the death of all of the three children of Isaac W. Frank or until the youngest grandchild of Isaac W. Frank living at the time of the creation of the said trust attains the age of twenty-four years, whichever is later, at which time the trust shall cease and "the principal thereof" shall be distributed to the issue respectively of the children of Isaac W. Frank, or, in default of all issue, to certain charitable and educational institutions, subject, however, to the discretionary provisions of Article 5. All of the three children of Isaac W. Frank are now living. The youngest grandchild of Isaac W. Frank living at the time of the creation of the said trust is now more than twenty-four years of age.

9. Article 5 of the said deed of trust provides that "Anything hereinabove to the contrary notwithstanding," the trustees shall have the right, in their discretion, to make distribution of the principal of the trust estate, together with any undistributed income, in whole or in part, to religious, charitable, philanthropic, educational or public uses and to the children of Isaac W. Frank "at any time after my death and the death of my wife, Tinnie K. Frank," subject, however, to the consent of such of the children of Isaac W. Frank who are then living.

10. The corpus of the trust estate at the time of the creation of the trust consisted of securities which had produced gross income amounting to $91,949.45 in the year 1928, $97,507.40 in the year 1929, and $38,453.87 in the period of less than five months in 1930 up to May 21, when the trust was created.

11. Isaac W. Frank, the creator of the above trust, died on December 1, 1930.

12. Because of the appointment by the Comptroller of the Currency of the United States of America of a receiver for the above-named Bank of Pittsburgh, National Association, and its consequent inability to continue to act as one of the trustees, the said Bank of Pittsburgh, National Association, through its receiver, C. O. Thomas, on November 30, 1931, resigned as one of the trustees of the Isaac W. Frank Trust of 1930. The said resignation was accepted on December 31, 1931, by the three above-named individual trustees, William K. Frank, Robert J. Frank and S. J. Anathan.

13. The following is a statement of the net income of the Isaac W. Frank Trust of 1930 for the period from December 1, 1930, to May 31, 1945, and of the amounts paid therefrom to the decedent, Tinnie K. Frank:

| Year | Net Income | Amounts paid to T. K. Frank |
|---|---|---|
| 1930 (December) | $ 6,630.00 | $ 6,630.00 |
| 1931 | 53,040.00 | 50,000.00 |
| 1932 | 45,747.00 | 45,747.00 |
| 1933 | 39,780.00 | 39,780.00 |
| 1934 | 39,780.00 | 39,780.00 |
| 1935 | 76,164.08 | 75,000.00 |
| 1936 | 45,765.79 | 45,765.79 |
| 1937 | 81,138.56 | 75,000.00 |
| 1938 | 71,618.51 | 67,483.48 |
| 1939 | 63,592.35 | 52,414.32 |
| 1940 | 73,664.10 | 71,840.21 |
| 1941 | 81,843.61 | 75,000.00 |
| 1942 | 68,813.05 | 68,813.05 |
| 1943 | 71,625.11 | 71,625.11 |
| 1944 | 74,944.96 | 74,944.96 |
| To May 31, 1945 | 19,525.10 | 20,357.28 |
| | $913,672.22 | $880,181.20 |

Additional payments to Tinnie K. Frank made in the years 1940 to 1943, representing adjustments in the income account of the trust for the years 1930 to 1939, inclusive, except the years 1935 and 1937.            18,978.78

Total payments to
Tinnie K. Frank            $899,159.98

14. In the year 1931, because of the receipt by the trustees of the waiver referred to in paragraph 16 of the findings of fact, the net income of the Isaac W. Frank Trust of 1930 in excess of $50,000 was distributed, in equal shares, to the children of Isaac W. Frank. In each of the years subsequent to 1931 in which the net income of the Isaac W. Frank Trust of 1930 was more than $75,000 the amount in excess of $75,000 was distributed, in equal shares, to the children of Isaac W. Frank.

15. On September 24, 1930, Isaac W. Frank, the creator of the Isaac W. Frank Trust of 1930, wrote a letter to the Bank of Pittsburgh, National Association, and Isaac W. Frank, co-trustees under a deed of trust executed by the latter on January 3, 1927, in which he agreed that, in the event that the income from the Isaac W. Frank Trust of 1930 should not be sufficient to permit the payment of $50,000 annually therefrom during his lifetime to his wife, the amount necessary to make up such deficiency should be taken from the income which was payable to him from the trust which he had created on January 3, 1927. The said agreement was accepted by the said co-trustees under the said 1927 trust. A copy of the letter of September 24, 1930 and of the acceptance by the co-trustees is Exhibit "B" of the evidence.

16. On or about August 27, 1931, the decedent delivered to the trustees of the Isaac W. Frank Trust of 1930 a written instrument signed by the decedent, in which she waived the payment to her of the sum of $25,000 of income from the trust for the year 1931 and released the trustees with respect thereto. A copy of the waiver of payment, dated August 27, 1931, is Exhibit "C" of the evidence.

17. At the time the Isaac W. Frank Trust of 1930 was created, and at all

times thereafter until the death of Isaac W. Frank on December 1, 1930, Isaac W. Frank, and his wife, Tinnie K. Frank, lived alone at the Hotel Schenley, Pittsburgh, Pennsylvania. Their only employee was a chauffeur. They did not maintain any other home. All of their children were married and living in their own homes. Following the death of Isaac W. Frank, Tinnie K. Frank continued to live at the Hotel Schenley until her death. Her only employees were a chauffeur and, for most of the time, a nurse-companion.

18. The income of decedent, Tinnie K. Frank, for the period from January 1, 1931 through May 31, 1945, was $966,932.57 and her total disbursements for the same period were $884,998.05, as shown by Exhibit "D" of the evidence.

19. Under date of April 17, 1934, and again under date of April 30, 1941, the decedent executed and delivered written releases to the trustees of the Isaac W. Frank Trust of 1930, wherein the decedent ratified and approved all distributions made and actions taken by the trustees in the administration of the trust to the dates of the respective releases and released the trustees from any claim or demand whatsoever which the decedent ever had had or could have by reason of their administration of the trust. A copy of the release dated April 17, 1934 is Exhibit "E" of the evidence, and a copy of the release dated April 30, 1941 is Exhibit "F" of the evidence.

20. The gross income of the Isaac W. Frank Trust of 1930 for the period from January 1, 1945 to June 1, 1945, the date of the decedent's death, was $20,357.28.

21. The expense incident to the management of the trust for the period from January 1, 1945 to June 1, 1945 was $832.18.

22. In making payments to the decedent of net income for this period in 1945, the trustees inadvertently paid to the decedent the gross amount of the income of the trust estate instead of the net income therefrom. Accordingly, they paid to the decedent all of the above-mentioned sum of $20,357.28, without deducting the above sum of $832.18, representing expense.

23. On August 28, 1946, the plaintiffs filed with the defendant, Stanley Granger, Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, a Federal estate tax return, Form 706, for the estate of the said Tinnie K. Frank, deceased. The said return showed a total estate tax liability of $29,197.28, which amount was paid by the plaintiffs on August 28, 1946, to the defendant, Stanley Granger, Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania.

24. In the estate tax return filed for the decedent's estate, the executors did not include in the gross estate of decedent any sum as owing and unpaid to the decedent by the Isaac W. Frank Trust of 1930. In Schedule "K" of said return, the above sum of $832.18 was deducted as a debt of the decedent.

25. Following an audit of the said Federal estate tax return, the Commissioner of Internal Revenue determined a deficiency in federal estate tax due from the estate of the said Tinnie K. Frank, deceased, in the sum of $52,954.27, as set forth in the Commissioner's notice of deficiency dated April 27, 1948. A copy of the notice of deficiency is Exhibit "G" of the evidence.

26. In his notice of deficiency, Exhibit "G", the Commissioner of Internal Revenue (a) included in the gross estate of the decedent the sum of $187,845.02, by determining that "said trust (Isaac W. Frank Trust of 1930) gave the decedent an annuity of $75,000.00 per annum from the date of death of said Isaac W. Frank on December 1, 1930, to the date of her death on June 1, 1945, or a total of $1,087,500.00 of which she received only $899,654.98 and that the balance is due her estate from the trustees of said trust and is part of her gross estate"; (b) disallowed as a deduction from the decedent's gross estate the sum of $832.18, being the expenses incurred in the management of the Isaac W. Frank Trust of 1930 for the period from

January 1, 1945 to June 1, 1945, the date of decedent's death, by determining that "the total amount paid by the trustees for this period is less than the amount of the annuity to which she is entitled"; (c) reduced the amount of the estate's deductible administration expenses by the sum of $165.50. The Commissioner's reduction of $165.50 in administration expenses is not contested by the plaintiffs.

27. The said deficiency in the sum of $52,954.27, together with interest thereon in the sum of $6,185.49, or the total sum of $59,139.76, was paid by the plaintiffs on August 12, 1948, to the defendant, Stanley Granger, Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania. Additional interest on the said deficiency in the sum of $8.71 was paid to the defendant on August 20, 1948.

28. On February 21, 1950, within the time required by law, the plaintiffs filed with the defendant, Stanley Granger, Collector of Internal Revenue for the 23rd Collection District of Pennsylvania, at Pittsburgh, Pennsylvania, on the form prescribed by the Commissioner of Internal Revenue for such purpose, namely, Form 843, a claim for refund of the sum of $59,092.76, plus interest, as provided by law. The said sum of $59,092.76 represents the portion of the above-recited deficiency of $59,139.76 which resulted from the Commissioner's determination as to items (a) and (b) in paragraph 26 of the findings of fact, which the plaintiffs assert are erroneous, namely, $52,907.27, and interest in the sum of $6,185.49 paid thereon by the plaintiffs. A copy of the claim for refund is Exhibit "H" of the evidence.

29. This suit was filed on February 11, 1952, at which time more than six months had elapsed since the filing by the plaintiffs of the said claim for refund, Exhibit "H". No decision has ever been rendered on the said claim by the Commissioner of Internal Revenue.

## Discussion

Plaintiffs say that the principal question involved is whether the decedent was an income beneficiary only, with no right to require an invasion of principal to meet income deficiencies, or whether she was an annuitant and therefore entitled to a guaranteed payment of $75,000 a year from income, and, if necessary, from principal. Plaintiffs also say that if decedent is only an income beneficiary there is nevertheless an issue as to whether she was entitled to be reimbursed from the excess of income over $75,000 in any year, for the deficiencies in income below that amount in other years.

It is appropriate that the first proposition mentioned should be first discussed. The defendant takes the position that an interpretation of the trust discloses that the $75,000 per year payment to the decedent was an annuity and maintainable from principal in the event that the income was insufficient. Under this view the sum of $187,845.02, being the difference between what the decedent actually received, which was $899,654.98, and $1,087,500, the amount she would have received as an annuitant, the defendant says, is includable in her gross estate for estate tax purposes. It is noted that the writing involved is an inter vivos deed of trust, executed in Pennsylvania by a resident of Pennsylvania, to be performed in Pennsylvania. Plaintiffs urge that the instrument has been construed by a Pennsylvania court of competent jurisdiction in an actual controversy, and as the construction placed upon the instrument by that court is favorable to plaintiffs, this court should follow the state court decision. In this connection it is kept in mind that this is a Federal estate tax case. The Orphans' Court of Allegheny County, Pennsylvania, in an actual controversy between the executors and the Commonwealth, construed the deed of trust as granting a right to income only. Judge Trimble of that court stated:

"It can not be argued that the provision made for Mrs. Frank is a gift of a common law annuity. * * * If that must be the conclusion, then the ordinary meaning of

**504**

the grantor's words must be abandoned." Opinion of Trimble, P. J., No. 3208 of 1945 (Exh. "A", T. 10–11).

In this discussion and in reaching my decision, this court has in mind the opinion of the Court of Appeals in Gallagher v. Smith, 3 Cir., 223 F.2d 218. It is apparent that this case falls into the second category of tax cases discussed by Judge Maris. Judge Trimble had before him the issue as to whether the Commonwealth of Pennsylvania could collect a transfer inheritance tax on income granted to the decedent but uncollectable by the trustees, that is, whether the deficiency in income from the inception of the trust to her death belonged to her because the payment was an annuity or whether she was entitled to the $75,000 per year from income only.

Irrespective of whether this court is bound by the decision of Judge Trimble or not, it is felt that the interpretation of the instrument by Judge Trimble in his written opinion is the reasonable and correct one. It would be difficult to improve upon the language of Judge Trimble as it appears in his analysis of the intent and meaning of the instrument. His language is:

"There are other provisions disposing of income after the death of the children and, after all the life estates provided for, the corpus of the estate is vested in the issue of grantor's three children, but, 'If at any time before the distribution of the principal as herein provided the purpose of this trust shall fail by reason of the death of all of the beneficiaries herein provided for, then and in that case the property herein put in trust shall be distributed' to designated charities.

"It is significant throughout this deed of trust that income up to $75,-000.00 shall be paid to the grantor's widow. All other objects of the trust are subordinated to her right to have this sum of money from income only. There is no indication in this deed that any part of the principal may be distributed by the trustees for any purpose during the lifetime of Mrs. Frank. The fifth paragraph of his deed shows the care of the husband for his wife when he prohibits distribution of any part of the principal or any part of the income to any member of his family or to charities until after her death or until she has received her full award of income.

"It can not be argued that the provision made for Mrs. Frank is a gift of a common law annuity because, if so, it must be a charge on the principal and payable in the amount specified until her death. If that must be the conclusion, then the ordinary meaning of the grantor's words must be abandoned. In the deed the amount of money provided for is to be paid 'annually in quarterly installments'. That was the grantor's way of saying that his widow should be paid income by the trustees, without demand, four times a year to suit her convenience, not the trustees'. And that these payments must be made from income and not principal is emphasized by his own distribution of the balance of the income to other members of the family. This gift was not a common law annuity. If its source were a will instead of a grant, it would probably be described as a demonstrative legacy."

There are other factors which, when considered in the language of the deed of trust, strengthen the view that the trustees were not to invade the principal to pay Mrs. Frank $75,000 per year. One fact not discussed by Judge Trimble is found in No. 15 of the findings of fact. Previous to setting up the trust for his wife, Isaac W. Frank did, on January 23, 1927, create a trust for his own benefit. On September 24, 1930, Mr. Frank directed his trustees to make up any deficiency in income to Mrs. Frank by diverting the income from his own trust to the trust created for her. This was done by letter four months and three days

after he had set up his wife's trust. It thus appears by strong inference that Mr. Frank was still thinking of the income provisions for his wife. In the trust created or in the letter four months later, Mr. Frank did not in any language refer to or by any inference create the impression that he had given authority that his wife's income was to be a charge against the corpus of the trust. It is apparent that he believed that the income would produce the necessary annual payment because he was careful that the surplus in any one year should be paid to the children and not accumulated.

The Government seems to place considerable reliance on the decision of In re MacMackin's Estate, 356 Pa. 189, 51 A.2d 689, decided after the decision by Judge Trimble. However, it is believed that that decision does not in any way weaken the construction put upon the deed of trust here, as the issue there turned to a considerable extent on the fact that there was a conflict in the instrument itself as to whether the payments were to be from income or principal as the will used the word "income" and also used the word "annuity."

This is a case under Section 811 of the Internal Revenue Code. The inquiry as to the provisions of and the construction of the trust are important only as they determine whether Mrs. Frank owned a claim against the trustees at the time of her death. In the various subheadings under this section, reference is made " * * * To the extent of the interest therein of the decedent at the time of his death * * *." Section 811(a). In Treasury Regulation 105, Section 81.13, the language is: " * * * there shall be included in the gross estate all property of the decedent * * * the beneficial ownership of which was in the decedent at the time of his death. * * "

█ If it be assumed arguendo that the decedent's interest in the annual payment was an annuity, then this court sees no reason why the releases offered in evidence, executed by the decedent during her lifetime, did not extinguish any obligation of the trustees to pay her

excess income over and above that which she received through April 30, 1941. The decedent was receiving an adequate income for her purposes. She executed releases running to the trustees, the first one dated August 27, 1931, which dealt only with the income for the year 1931, and in this she instructed the trustees not to pay her any amount above $50,-000. The next release was dated April 17, 1934, in evidence marked Exhibit "E". In this release the trust of May 21, 1930 is referred to, with a recital of the fact that the income had not been sufficient to make the annual payments of $75,000 and also a reference is made as to whether or not certain dividends received by the trust and disbursed by the trustees represented a part of the corpus of the estate. At the time she executed the 1934 release, Mrs. Frank acknowledged that she had received but $45,747 in 1932, and $39,780 in 1933, which, of course, was far less than the payment directed to be given to her. There is a recital that in consideration of the love and affection that decedent bore her children, the other beneficiaries of the trust, as well as the sum of one dollar, decedent ratified and approved all the actions taken by the trustees in the administration of the trust to date and she released the trustees jointly and severally " * * * from any claim that I now have and can have against them, or any of them, by reason of their administration of said trust." (Emphasis supplied.) During the interval between the inception of the trust and the third release, which was executed April 30, 1941, decedent in no year was paid an excess of $75,000. In fact in only two of the eleven years did she receive $75,000. On the latter date, she again released the trustees and ratified and approved all disbursements made and action taken by the trustees during the administration of the trust to that date. The releases were not before the Orphans' Court at the time Judge Trimble made his decision. The reason is stated by the witness William K. Frank, who testified that they had been placed in a safe deposit box and were overlooked at the time the litigation was had before

*Judge Trimble.* When all the facts and circumstances are considered, it seems apparent that Tinnie K. Frank, with full knowledge of her rights under the deed of trust, released and renounced any claim she may have had against the trustees to receive $75,000 each year.

█ Defendant says that the spendthrift provisions of the trust render these releases ineffective. He says that they amounted to an assignment or transfer of a beneficial interest. The court does not agree. The spendthrift provisions in paragraph 6(d) are the usual ones. They prohibit the cestui que trustent " * * * in *anticipation* to sell or assign said payments or distributions or have the power to dispose thereof by anticipation or otherwise. * * * *" (Emphasis supplied.) They do not prohibit a release by the decedent of claim for income under the circumstances presented here. The releases only refer to past income and are not in anticipation of future income, nor do they release the trustees from any obligation cast upon them by the trust to be performed subsequent to the date of the releases. Certainly such provisions do not prevent the parties from settling among themselves the construction of an instrument which, to say the least, could have caused a family disagreement as to the extent of the interest of the decedent, the mother of the other principal beneficiaries.

Thus it must be concluded that even though the payment of $75,000 was an annuity, the amount unpaid was lawfully extinguished by the decedent up to 1941 and to that extent she had no interest in any deficiency in income, as she did not own it " * * * at the time of [her] death * * *" as required by Section 811.

█ The second proposition is briefly mentioned. In 1941 the net income of the trust was $81,843.61, and Tinnie K. Frank was paid $75,000. In 1942, the trust earned $68,813.05, which was the exact amount paid to decedent. In 1943, the trust earned $71,625.11, which was the exact amount paid to decedent. In 1944, the trust earned $74,944.96, which

was the amount paid to the decedent. On June 1, 1945, decedent died. Of course, the releases mentioned do not cover the years 1941 to 1945, inclusive. However, pursuant to the terms of the trust, the excess income for the year 1941 over the $75,000 paid to Mrs. Frank, in the sum of $6,843.61, was paid to the other beneficiaries, that is, the children. In making this payment, the trustees followed the same practice as had been pursued in each year that the trust earned a surplus during Mrs. Frank's lifetime. It is observed here that the income after the death of Mrs. Frank was payable to the children. However, the record does not indicate total earnings of the trust for the calendar year 1945. The income was payable quarterly. Mrs. Frank died during the second quarter. If the trust earned over $75,000 during the year 1945, had she lived, Mrs. Frank would, of course, have collected the full amount. Having died in the second quarter of the year, she was paid the gross earnings of the trust during that portion of the year in which she lived. Nevertheless, the deficiency assessment, as made by the Commissioner at $6,250 a month, is erroneous as computed on an annuity basis and not on an income basis, so that for the purposes of this decision the income for five months is considered to be that paid to Mrs. Frank in the sum of $20,357.28.

This court has placed its own construction upon the terms and provisions of the deed of trust independently of the decision of Judge Trimble of the Orphans' Court of Allegheny County. However, it is believed that his decision was the correct one and is followed here to the extent that it prohibits the invasion of the principal to pay income to Mrs. Frank, but it is believed that logic and consistency require a ruling favorable to plaintiffs in the second proposition mentioned. The trustees at the inception of the trust were confronted with the requirement that surplus income should be disbursed to the children. They did so. In doing so, they followed the express language of the deed of trust. Thus it became im-

possible to pay any arrearages arising in subsequent years out of surplus net income. The situation cannot be better described than in the holding of the Superior Court of Pennsylvania in Re Brock's Estate, 156 Super. 616, 41 A.2d 347, 348, which is quoted.

*"Testatrix' disposition of all the net income in excess of $18,700 makes it impossible to pay arrearages out of surplus net income arising in subsequent years,* for there can be no surplus income undisposed of without doing violence to the express language of the will. \* \* \* The payment of past deficiencies to other annuitants would be in direct contradiction to what is unmistakably otherwise ordered to be done with the income exceeding the named figure. The excess above $18,700 is obviously intended to be calculated on a yearly basis, for the will declares that all sums above that amount *are to be distributed* to Augustine Haughton and Margretta Stewart Dietrich. \* \* \*

"We think the language of the will was intended to make *each year stand alone* and that it was not proposed to carry forward into subsequent periods the ill fortune of earlier years." (Emphasis supplied.)

Thus, at the time of her death Mrs. Frank had no interest in any income accruing from the date of the last release, executed April 30, 1941, to the date of her death, within the meaning of Section 811.

Plaintiffs seek to recover $59,092.76 with interest, which they paid on the deficiency assessment made by the Commissioner. In this amount is the sum of $832.18, representing a disallowance as a deduction from the decedent's estate of management expenses of the trust. The Commissioner took the position that as Mrs. Frank was an annuitant, trust income in 1945 prior to her death was not chargeable with expenses. For the period to May 31, 1945, the trustees paid to the decedent the total income without deduction for expenses. The court agrees with the plaintiffs' view that the sum of $832.18 amounts to an overpayment to the decedent as she was entitled to net income only so that the deduction should have been allowed by the Commissioner.

### Conclusions of Law

1. That the determination by the Commissioner of Internal Revenue that the Isaac W. Frank Trust of 1930 gave the decedent, Tinnie K. Frank, an annuity of $75,000 per annum from the date of his death on December 1, 1930 to her death on June 1, 1945, or a total of $1,087,500 is erroneous.

2. That the inclusion by the Commissioner of Internal Revenue of the sum of $187,845.02 in the gross estate of the decedent, Tinnie K. Frank, was erroneous as a matter of law, as under Section 811 of the Internal Revenue Code, decedent, Tinnie K. Frank, had no interest in said sum of money at the time of her death.

3. That the deficiency assessment made by the Commissioner of Internal Revenue of the sum of $52,954.27 was erroneous as a matter of law, except for the sum of $165.50, being an item of miscellaneous expense.

4. That the plaintiffs, William K. Frank and Robert J. Frank, executors under the will of Tinnie K. Frank, deceased, are entitled to recover the sum of $59,092.76, computed in No. 28 of the findings of fact, with interest as provided by law.

On notice counsel will submit an appropriate order for judgment in favor of the plaintiffs.