## Dwight Estate

*William H. Rivoir, Jr.* and *Charles M. Hamilton,* for exceptant.

*J. Montgomery Forster* and *Clarence L. Walker,* contra.

SAYLOR, J., November 9, 1956.—Testator, a bachelor, died in 1934, leaving a will executed by him on November 18, 1926, and four codicils thereto. By the second clause or paragraph of his will he created a trust of $300,000 for the benefit of Camilla Ross Austin, a niece, and of Margaret Erskine Canby. By the third paragraph he created a second trust out of his residuary estate for the benefit of two grandnieces, Dorothy Knight Colford and Clara Dwight Colford, minors at that time and presently living.

By his first codicil dated October 23, 1928, testator modified the third paragraph of his will by directing prior payment out of residuary trust income of $500 a month during her life to Helen Elizabeth Barck. By his second codicil, executed on the same day, testator further modified the third clause of his will by directing payment out of his residuary estate of $1,000

a month to Ethel Heberton Harris during her life. Neither of these beneficiaries was related to testator.

By his third codicil, executed July 4, 1929, testator modified his first codicil by increasing the Barck bequest to $1,000 a month. By his fourth codicil, executed January 18, 1933, he revoked the trust set up under the second paragraph of his will and established a trust of $200,000 for his niece, Camilla Ross Austin, alone.

At his death testator left an estate consisting of personalty inventoried at about $400,000 and real estate aggregating in value about $700,000. But death came during a major depression, and after the payment of debts, taxes and administration expenses, there remained less than the $200,000 in personal estate needed to set up the primary trust. The remaining asset was unimproved land. Consequently, for years no income was paid to any beneficiaries of the residuary trust. Only in August 1938 was the primary trust principal of $200,000 finally set up, and because of the payment of carrying charges on nonproductive real estate, it was not until long after that that any substantial amounts of income were paid to the two primary beneficiaries of the residuary fund.

Helen Elizabeth Barck died September 20, 1951. Thereafter the entire income was paid to Ethel Heberton Harris, who died September 8, 1955, having received during her life income payments totaling $27,646.72.

At the audit of the trustee's fourth account, which showed a principal balance of about $88,000, with all the real estate sold, Ethel Heberton Harris's personal representative claimed the balance of principal as due her estate on account of arrearages in monthly payments amounting to $255,000. The claim was based on two contentions:

1. That the $1,000 to be paid monthly was an annuity; hence arrearages should be paid out of principal; and

2. that, if not an annuity, arrearages of payments should be paid out of income thereafter accumulated.

The auditing judge, Bolger, J., rejected these contentions and awarded trust principal back to the trustees to pay income earned after the death of Mrs. Harris to the two grandnieces in accordance with the provisions of the third paragraph of the will. To this ruling, Mrs. Harris' executor has filed exceptions.

The third paragraph provides for the payment of net income to the grandnieces, share and share alike, one half each, for and during the term of their respective lives, and on the death of each for the payment of the income she was entitled to receive during her life to her children living at her death and the issue, then living, of deceased children. Further provision was made for the payment of the income failing issue, and for the distribution of principal at a designated point of time.

These provisions for the payment of income were materially affected by the first two codicils. In the first codicil testator provided:

"I hereby modify the Third clause of my said will by directing that my Trustees shall first pay *out of the income of my residuary estate* the sum of Five Hundred Dollars ($500) each month after my decease to Helen Elizabeth Barck for and during her natural life and *the balance of said income as therein directed.*"

In the second codicil the testator provided:

"Whereas, by a first codicil to my said will I modify the Third clause thereof, now I do hereby further modify the same by directing *that in addition to the payment out of income* of my residuary estate directed

in said Codicil *there shall also be paid to Ethel Heberton Harris the sum of One Thousand Dollars ($1,000) each month* after my death, for and during the term of her natural life, and *the balance of income only as directed in the Third clause of my said will."* (Italics supplied.)

### A. The Claim That The Monthly Payment Was an Annuity

Exceptant claims that the language of the second codicil evidences the intention of the testator to establish a legal annuity for Mrs. Harris because the monthly payment to her is not specifically limited to income as in the case of the other three beneficiaries. Counsel contends that in Mrs. Harris' case testator did not specify whence the monthly payments were to come; that is, from income only, from principal or from both to the extent necessary, and that when he used the word "only" in the final clause of the second codicil following the words, "the balance of income", he indicated that he had had *principal* in mind when he provided for the payment of the monthly amount and adverted to income alone when he disposed of the balance thereof as he had done in the first codicil's final clause.

We believe this to be a wrong reading of the testator's language. The presence of the words "out of income" in the language of the first codicil and their absence in the second codicil are far from enough in our opinion to show that testator had in mind a source of the monthly payments to Mrs. Harris different from that for the payments to Mrs. Barck and the grandnieces. Moreover, the testator may have used the word "only" to qualify the phrase "as directed in the Third clause of my said Will" which follows it and not to qualify the words "the balance of income" which precede it.

To determine a testator's intent recourse must be had to the whole will and its attendant codicils: Boyer Estate, 372 Pa. 553 (1953). To ascertain whether a testator has created an annuity his intention must be discovered in the consideration, not of a few words out of context or otherwise, but of the whole body of the language making provision for a fixed regular payment to a beneficiary: MacMackin Estate, 356 Pa. 189 (1947).

As was said in Brock Estate, 156 Pa. Superior Ct. 616 (1945), at page 619:

"The guiding principle to be kept in mind in the construction of a will, where its meaning is not free from doubt, is that the law seeks to discern the true intention of the testatrix as it may be gathered from the four corners of the document. Brennan's Estate, 324 Pa. 410, . . . Calder's Estate, 343 Pa. 30. . . ."

Nowhere in will or codicils did the testator use the word "annuity" or refer to principal as the source of any monthly payment. He used no language whatsoever to indicate that, whatever the fate of trust principal and hence of trust income, the payments to Mrs. Harris were nevertheless to be made regularly and in full amount. Only by assuming that testator intended payment to be made out of principal because he did not specify it was to be made out of income can it be argued that he intended the former to be the source.

A study of the complete body of language creating the residuary trust and directing payments therefrom forces the conclusion that testator intended not merely to benefit Mrs. Barck and Mrs. Harris in their lifetimes as income beneficiaries, but that he likewise intended so to benefit his grandnieces and to leave the principal of the trust eventually to their issue. Equally clear it is that he never intended that Mrs. Harris, a woman unrelated to him, on failure of adequate income to receive payment during her life, should receive

principal in lieu thereof, thereby effectually destroying all hope of such grandnieces and their issue ever receiving anything whatsoever, income or principal.

But exceptant contends that such is not a proper reading of testator's intention and that under the law as an annuitant Mrs. Harris was entitled to payment out of principal. He cites Johnston's Estate, 264 Pa. 71, where the Supreme Court laid down the rule that (page 76) "In the absence of an express restriction, or its equivalent, the corpus of an estate given subject to an annuity may be taken for its payment when the income proves insufficient for that purpose. . . ."

Unquestionably in that case an annuity was involved. The facts, quite different from those in the case at bar, justified the use of the word "annuity" in describing the provision testator made for his widow. By an antenuptial agreement the testator provided for his wife a life annuity of $6,000 secured on real estate. In his will testator gave his wife $6,000 "annually, during her life", and provided that it be a lien upon any real estate of which he died seized and be accepted by her in lieu of dower rights.

The court said (pages 75-76) :

"The widow was the principal object of testator's bounty and while he doubtless thought the income from the estate would prove ample to pay her annuities he makes no such limitation. The fact that the gift over to the grandchildren is expressly made subject to all prior provisions, gifts and bequests, which include the widow's annuities, tends to negative any intent on part of testator to limit her to the income; as does the fact that the annuities are expressly charged upon all the real estate."

Unquestionably also there was a legal annuity in MacMackin Estate, 356 Pa. 189 (1947). There testator provided for payment of specific amounts annually out of income of a residuary trust to his widow,

to a son and, finally, if any income remain, to certain collateral relatives. Income diminished as time passed and only the widow received full yearly payment. One of the parties who had received less than the full amount sought payment of the deficiency out of corpus. This the court allowed. It said significantly (pages 192-93):

"The appellant, in ascribing error to the action of the court below in such regard, stresses and relies wholly upon the fact that, in making the bequests of the annual sums to the individuals named in the will, the testator spoke, in that connection, of payment 'from the income' or 'out of the income' of the trust estate. If that were the extent of the decedent's testamentary words and intendment with respect to the character of the bequests, it would at once have to be conceded that they carried with them no more than a right to participate *pro tanto* in distributions of income annually derived from the trust estate and that, therefore, they were not annuities in the strict legal signification of that term. But, that is by no means all the will contains in material regard. . . ."

The court thereupon referred to testator's use of the word "annuities" in referring to the bequests preceding disposition of possible excess income and thereafter twice referred to the "foregoing annuities". Whereupon the court said (page 193):

"On the basis of the wording of the will we have, therefore, to determine how the testator really regarded the bequests and from what source or sources he intended them to be paid in full on the specified annual basis. The seeming conflict between bequests payable 'out of income' and their defined status as 'annuities' is to be resolved in accordance with the intent derivable from the will as a whole, Calder's Estate, 343 Pa. 30, 34 . . . ; Brennan's Estate, 324 Pa. 410, 413-414. . . ."

Furthermore, the court, referring to one of the appellants, a charitable residuary beneficiary, stated that, having "shared, in the lifetime of the personal legatees, in a distribution of income which, if retained by the trustees for future needs . . . would have obviated any deficiency in the continued payment of the personal bequests from income, it came with rather poor grace for that particular volunteer to seek a result that would tend to distress beneficiary relatives of its own benefactor for no better purpose than to enhance the charitable remainderman's otherwise large windfall": MacMackin Estate, supra, page 194.

Unlike the preceding case, in Pusey Estate, 370 Pa. 572 (1952), the testator never referred to bequests of annual payments to individual and charitable beneficiaries as annuities. The court found that an examination of the will did not show any other words indicating that the testator intended the payments to be made out of principal. Moreover, the court denied the contention of certain individual beneficiaries that the testator intended that they be paid their respectve annual amounts from income in full before payments to a charity. It said (page 576):

". . . unless a contrary intent appears in the will, all annual payments out of income in case of a deficiency abate ratably: Appeal of Trustees of the University of Pennsylvania, 97 Pa. 187, 200."

Again, in Elmore Estate, 379 Pa. 155 (1954), where the testator provided for life payments " 'out of the income of my estate' " but made no reference to such payments as " 'annuities' ", the court held that it was not his intention that arrearages in income payments to life tenants should be made up from principal to the detriment of the pecuniary legatees. This conclusion was reached even though the court in a previous decision (Elmore's Estate, 292 Pa. 571) had "held that the income beneficiaries were the object of

testator's first consideration and that the whole estate, if necessary, should be set aside to secure the payment of the prescribed monthly payments to them."

Thus it would appear that annual sums left by will or monthly sums taken over the period of a year are not automatically entitled to be treated as legal annuities, payable if necessary out of principal. The real determinant of whether a payment is of the character that entitles the beneficiary to invade principal or trust corpus to make up any deficiency in income is the intent of the testator and not his mere use, careless or otherwise, of the word annuity. If from the complete language of the will, even in the absence of the word annuity, it is apparent that the testator intended that principal might be invaded to make up any deficiency in income, then the court may equitably permit such invasion. In the instant case, there is no such intent evident. The claim of the right to invade principal was properly denied.

### B. The Claim That Arrearages be Paid Out of Income to be Earned

To support the claim that, even though Mrs. Harris did not have a legal annuity, her estate is entitled to payment of deficiencies out of income henceforth to accrue, reliance is placed on Reed's Estate (No. 1), 236 Pa. 572 (1912). There the testatrix directed payment out of income from the residuary trust of $8,000 a year for life to her son Lloyd and further provided that " 'if said income shall be insufficient therefor, then to pay therefrom' " to her son Charles for life a similar amount per annum. Testatrix also directed payment of income in excess of $16,000 a year equally between her two sons, and added: " '. . . but in any event I direct that my said son Lloyd G. Reed shall receive all the income accruing from all the rest, residue and remainder of my estate until he shall have re-

ceived the sum of eight thousand ($8,000.00) dollars per annum, before the said Charles M. Reed shall receive any pay part thereof whatsoever'."

Never during his life did Lloyd receive $8,000 a year. The court held that, however inequitable it might appear to award all subsequent accrued income to his estate to make up the deficiency, if testatrix designed her estate distribution as she did, it was not for the court to give any different effect to her intentions as she expressed them. The court respected testatrix's precise language as to priority of payment to Lloyd and awarded income accumulations to his estate.

In determining that decedent had created an annuity for Lloyd, the court cites Rudolph's Appeal, 10 Pa. 34 (1848), as authority for the rule that (page 577) ". . . where the income out of which an annuity is to be paid fails in any year or years the arrearages on the annuity are to be paid out of subsequent accumulations, unless there is a plain intent expressed in the will to the contrary."

In the Rudolph case, a deed provided for payment to the grantor's widow during her widowhood of an "annuity of $1,000, in quarterly payments of $250 each, yearly" in satisfaction of dower, jointure and thirds. The court found that the words of the deed precluded all doubt that only after the annuity is fully paid are the other payments provided for in the deed to be made.

In both of these cases the court treated the payments as legal annuities. In a much later case the Superior Court refused to do so under the facts before it.

In Brock Estate, 156 Pa. Superior Ct. 616 (1945), the testatrix provided for payment " 'out of the net income from said trust estate, the following annuities for the life or lives of the respective annuitants . . .' ". Further, she provided that excess income be paid to other parties named. The court found that the dis-

position of all the net income in excess of the total of the specific annuities "makes it impossible to pay arrearages out of surplus net income arising in subsequent years, for there can be no surplus income undisposed of without doing violence to the express language of the will": page 620.

It decided (pages 621, 622) :

". . . the language of the will was intended to make each year stand alone and that it was not proposed to carry forward into subsequent periods the ill fortune of earlier years. . . . That this was testatrix' plan of distribution seems clear from a consideration of the entire will, and under it there is no room for the contention that arrearages were intended to be made up to the annuitants out of the income earned in years subsequent to those in which the deficiencies arose."

In Smith Estate, 5 D. & C. 2d 31 (1955), this court, following the rule of Reed's Estate (No. 1), supra, in order to assure payment to settlor's widow out of subsequently earned income of possible future deficiencies in annual payments due her under her husband's deed of trust, required the establishment of a reserve fund of accumulating income. Thereby we denied to a nephew of the settlor, the surplus income beneficiary, the full amount of excess income received annually. This court held that the rights of the widow and of the nephew were determined by the intention of the settlor as expressed by the deed, and cited Howell Estate, 180 Pa. 515, where the Supreme Court said (page 521) :

"The right to the surplus income vested as it accrued in the testator's grandchild (residuary legatee) subject to the right of the widow (life tenant) to have it retained by the trustees for the judicious protection of her annuity."

On appeal the Supreme Court (Smith Trust, 385 Pa. 416) (1956), affirmed, saying (pages 419-20) :

"Whether surplus income from a trust fund may or should be accumulated to meet anticipated future deficiencies or emergencies depends primarily upon whether such was the intention of the creator of the trust as expressed or implied in the trust instrument. Similarly the question of whether the trustee of a so-called 'annuity trust' should apply the surplus income of one year to make up deficiencies in previous years depends upon the intent which the settlor has expressed upon that subject [citing texts]."

In addition, we pointed out that the widow was the primary object of testator's bounty, and her rights were superior to those of the excess beneficiary. Because of the "unusual hazards" attached to the widow's interest, resulting from restrictions on the sale of corpus invested in a close corporation in which the excess beneficiary had a voice both as officer and co-trustee, we determined that "her interest should be protected if it is legally possible to do so": Smith Estate, supra, page 35.

Smith Estate is not similar in facts to the instant case. Here there is no such language as compels the court to read into the will and codicils an intent of the testator that the monthly payments to Mrs. Harris should be treated as an annuity and be maintained out of income after her death regardless of what happens to the other income beneficiaries. There is no provision that "in any event" she should receive such payments in full without regard to his provisions for benefiting his grandnieces. Testator directed that Mrs. Harris should receive $1,000 a month "for and during the term of her natural life". He did not employ any language whatsoever to indicate an intention that she should receive such an amount "in any event" or under all circumstances; nor that she should have any priority in payment over Mrs. Barck. As a matter of fact, Mrs. Barck had priority over Mrs. Harris be-

cause the testator in the first codicil directed his trustees to "first pay out of the income" of his residuary estate $500 monthly which was increased to $1,000 in the third codicil. He did not alter this priority despite his having provided for the $1,000 payment to Mrs. Harris in the second codicil.

Hence, if Reed's Estate were apposite here, and under the facts we do not believe it to be, it would be necessary in following it to set aside *first* for Mrs. Barck's heirs income to be accumulated in amount sufficient to make up deficiencies due her and, under exceptant's contention, in turn to her estate. But we do not believe testator had any thought or desire that such a thing would happen. In no language of will or codicil did he reveal any intention on his part that upon the death of either Mrs. Barck or Mrs. Harris their estates were to be paid over the years to come income necessary to make up deficiencies existing when each of them died. He did not intend to direct his trustees to pay, year in and year out, to the heirs of these two strangers to his blood the amounts they failed to receive and enjoy in their lifetimes and thereby deny any income whatsoever not only to testator's grandnieces during their lives but possibly to their issue during theirs. A trust estate presently worth $88,000 could not possibly earn $225,000 in income in less than 73 years. The deficiency due Mrs. Barck's estate, created over a shorter period, would amount to approximately $217,000, which amount it would take another 62 years to accumulate.

It is beyond comprehension that testator had any thought in mind that "in any event", or *whatever happens,* or *under all possible circumstances,* the full $1,000 monthly should be paid to these ladies and their heirs for 135 years, or possibly over a longer period, depending on the continued preservation of values in trust assets.

Testator set forth in the seventh paragraph of his will provisions of the character of a spendthrift trust clause and then said:

"It is my intention to benefit the persons interested, and not their creditors or alienees."

He never intended to benefit those he did not know. And it may be presumed that Mrs. Barck and Mrs. Harris knew this and accepted it.

## C. The Question of Estoppel

The auditing judge found that Mrs. Harris' estate was estopped from claiming payment of the deficiencies in amounts due her during her life because of her failure to claim any deficiencies at the time of previous accountings. In discussing this point, he referred to the seventh paragraph of the will wherein testator provided: "I further direct that all payments of income under any of the provisions of my will shall be made only as the same accrues, and not by way of anticipation" and said that this and language following, hereinabove quoted, evinced that testator was solicitous of the interests of the living and not the estates of the dead.

The record shows that during her lifetime two executors' and three trustees' accounts were filed, and that Mrs. Harris received a total of $27,646.72, although at $1,000 a month for a period of nearly 21 years she would have received approximately $255,000 had income been available. At no time during Mrs. Barck's life nor after her death in 1951 did Mrs. Harris demand payment of the full monthly payments or any deficiencies therein out of either income or principal.

Moreover, Mrs. Harris was a party to a stipulation entered into by the various income beneficiaries in 1947 whereby, with court approval, they agreed after deducting all expenses to payment of carrying charges and deficits on unproductive real estate out of one

third of the net income and equal division of the balance of net income quarterly between Mrs. Barck and Mrs. Harris. As the auditing judge has said, "It is beyond comprehension that the parties would have entered into such an agreement with the thought that there could be an asserted claim by Helen Barck and Ethel Harris in their lifetime, to say nothing of after their death, to the whole corpus of the residuary estate, or a claim after death on future income to meet arrearages of their monthly payments of income". The agreement permitted the parties to terminate it at the next court audit, but none did.

However, it would appear that this is not really a case of estoppel for the reason that there has not been any change effected in the relationship of the parties by the fact that Mrs. Harris in her lifetime did not assert any right to principal to make good her deficiencies in payment of income provided for her by the testator. No one was prejudiced by such failure, nor is now prejudiced by Mrs. Harris' personal representative's claim: Northwestern National Bank v. Commonwealth, 345 Pa. 192 (1942). Moreover, the disposition we now make of that claim leaves the interested parties, testator's grandnieces and their heirs, in a situation no different than that obtaining throughout the period following their granduncle's death.

In Moyer Estate, 63 D. & C. 453 (1949), (affirmed in 361 Pa. 18 (1949), Judge Hunter in his opinion for this court en banc held that a life tenant's failure to claim out of principal legacies of monthly income payable over a period of 20 years did nothing to estop herself or her estate from claiming what was lawfully hers. He awarded arrearages to her personal representative out of principal.

The fact that neither Mrs. Barck nor Mrs. Harris made any claim during their respective lives for payment of the steadily accruing deficiencies, the fact

that at her death Mrs. Barck's personal representative made no claim to make up deficiencies of income due her despite the testator's provision that his trustees "shall first pay" to her the $1,000 monthly, and the further fact that neither at that time nor at any time during the nearly four years Mrs. Harris lived after Mrs. Barck's death did Mrs. Harris make such a claim are all persuasive of the conclusion that both of those ladies and the personal representative of one of them accepted testator's language as evidencing his intent that they were to receive payments only if and when income earnings made them possible. Now that Mrs. Harris's estate seeks a novel and entirely different interpretation of the benefactor's language to the disadvantage of his kin, namely, his grandnieces and their heirs, it would appear that the injunction embodied in the seventh paragraph of his will referred to above should be given proper recognition. That is to say, the two ladies and the grandnieces and their heirs, not the creditors or beneficiaries of Mrs. Barck's or Mrs. Harris' estates, were the persons testator wished to benefit.

In summary we conclude that under the provisions of testator's will and codicils the monthly payments of $1,000 each, first to Mrs. Barck and then to Mrs. Harris, were not legal annuities, that payments were intended to be made only out of income earned by the residuary trust corpus during their respective lives, and that upon the death of Mrs. Harris her estate was not entitled to receive payment of any deficiencies then existing out of either principal or income to be earned in future.

The conclusions of the auditing judge as to the claim of the exceptant are affirmed except for the ruling as to estoppel.

For the reasons given herein, the exceptions are dismissed and the adjudication is confirmed absolutely.