## RUDOLPH'S APPEAL.

A. conveyed lands to a trustee, in trust to apply the rents and profits to the interest accruing on certain encumbrances, and the residue of said income to A. for life, and in case he should leave a widow, that the trustee should, out of the said balance, or nett revenue, income, and proceeds of the said yearly rents, pay said widow an annuity of $1,000 yearly during widowhood, which should be in lieu of dower, &c., and the residue of said rents and profits to third persons. A. died, and the rents and profits during certain years were insufficient to pay the interest on the encumbrances and the annuity: the widow is entitled to the arrearages out of the rents accruing during subsequent years.

FROM the Common Pleas of Philadelphia.

*Jan.* 25. The question was, whether an annuitant under a settlement, was entitled to be paid arrearages out of subsequent rents and profits.

By indenture, Rudolph conveyed certain lands to Vogdes in fee, in trust to let and demise the same, and, out of the rents and profits, to pay the interest accruing on certain bonds and mortgages on the lands therein recited, and also to pay taxes, &c.; and, afterwards, to pay the nett revenue, income, and proceeds of the thereby granted premises to said Rudolph, during his life ; and, in case he should leave a widow, the said trustee should, "out of the said balance or nett revenue, income, and proceeds" of the thereby granted premises, "pay unto the widow of the said Rudolph, during her widowhood, an annuity of $1,000, in quarterly payments of $250 each, yearly" during her widowhood, in satisfaction of dower, jointure, and thirds. And, after the said annuity or yearly sum was fully paid to the widow, upon trust to pay out of the balance, or nett revenues, income, and proceeds, a moiety of the balance to A., one of his children, and the other moiety to B. C. and others, his grandchildren.

Rudolph subsequently married the appellant, and died leaving her his widow. The trustee received the rents, and applied them according to the terms of trust; but, from 1843 to 1846, the rents of the property fell short of the amount required to pay interest on the encumbrances, expenses, and the annuity, so that,

on the 1st of January, 1846, the annuity was in arrear $2,950. The question was, whether the widow was entitled to be paid these arrears out of the subsequent rents and profits.

The matter was referred to Jos. Clay, Esq., as auditor, whose report was as follows :

"The second point, the payment of arrears, requires more consideration. The matter was submitted without argument; but the objection apparently is, that the words balance or nett revenue, income, and proceeds of the said yearly rents, issues, and profits, restrict the yearly payments of the annuity to the sum accruing year by year, and that thus the overplus of any one or more years cannot be taken to make up the deficiencies of prior years, but must be paid to the cestuis que trust in remainder. This view, however, is entirely too nice and technical, and it does not appear to be supported either by authority or by a sound construction of the instrument itself. It is settled in Horton v. Cook, 10 Watts, 124, that the grant of an annuity in terms out of whatever payable, primâ facie, binds the person, and the implication from it of a covenant to pay, can be rebutted only by a plain intent apparent on the face of the instrument, that the annuitant should resort only to a specific fund. There are also numerous cases,—Swallow v. Swallow, 1 Beav. 432, note (a); Stamper v. Pickering, 9 Sim. 176; Green v. Belchier, 1 Atk. 505; 2 Story's Eq. 1064; 2 Jarm. on Wills, 535,—where, in case of a deficiency, resort has not only been had to all the income, but even to the principal; and where a gross sum was to be raised, Lord Eldon expressly said, that the words rents and profits did not confine the power to annual rents: Bootle v. Blundell, 1 Merv. 233. In a very recent case, Foster v. Smith, 2 Y. & Col. 193, there was a devise of certain estates in trust to receive the rents, &c., and thereout, when and as the same grew due and payable, to pay a clear annuity to the widow of 200l. in quarterly payments, and immediately on the death of the widow, to convey to certain parties. The rents at first paid the annuity, afterwards there was a deficiency, and at the death of the annuitant there was a large sum in arrear, which was ordered to be made up out of the principal. It was said by Sir Knight Bruce, V. C., that the case would have been the same whether the rents and profits were to be considered annual, or howsoever derived from the land.(a)

(a) See Scott v. Salmond, 1 M. & K. 363, where there was a deficiency in the income provided for annuities, and Lord Brougham ordered the share of an annuitant who died to be paid to the next legatee, without making up deficiencies to

" Apart from these general principles, the words of the deed preclude all doubt. It is only after the annuity or yearly sum is fully paid that the other payments are to be made. This phrase is studiously repeated, and the fund for the payment of the rest of the *cestuis que trust*, is called the balance that shall then be remaining. The words annuity or yearly sum signify the whole gift or the annuity generally. The words yearly and every year are to be taken as indicating the time of payment, not as limiting the payments of the annuity to the income of each year whether great or small. There is no plain intent apparent that the annuitant should resort to the current income as a specific fund. The second payment of $25 is therefore correct also, and the arrears due to Mrs. Rudolph are to be made up in full out of the future profits after the payment of the accruing annuity."

Upon the report coming in, exceptions were taken by the parties entitled to the residue of the income, and the court, PARSONS, J., was of opinion and so decreed, that by the settlement the yearly payment to the widow, out of the rents and profits, was to be made to the extent of each year's rents only, and that where they fell short of the required amount, the widow bore the loss, and could not claim for her arrearages out of the subsequent yearly rents.

*Boone*, for the appellant.—The intent governs, and that was to give an annuity of at least $1,000; hence the arrears, with interest, are due to the widow. The words are to be construed in their technical sense, 4 W. 91; and it is said in 1 Atk. 505, that unless the payment of an annuity is confined to the *annual* rents, a sale will be decreed if necessary: 1 M. & K. 329; 4 Wht. 389; 9 W. 252; a devise of rents and profits passes the land: 2 Jarm. on Wills, 535–6; and *annual* rents is never the primary meaning of rents: 4 Russ. 86. In that case, and in 1 Beav. 431, 1 M. & K. 322, 9 Sim. 176, and 2 Y. & C. Ch. 193, the deficiencies of annuities payable out of rents were ordered to be made up out of future rents. To the same effect are 10 Sim. 596, 1 S. & St. 463, 2 Vin. Abr. tit. *Annuity*, 508. Even where the fund fails, if there is a clear intent to give a certain annuity at all events, it must be made up out of the residue: Milne *v.* Milne, 1 Ves. 106; 5 Russ.

the surviving annuitants, even out of the income; he seemed to think it impossible that the arrears should be claimed; but the decision seems only supported by the construction of the will. Sir John Leach appears to have decided in the first instance on such grounds. See Farmer *v.* Mills, 4 Rus. 86; Bradhurst *v.* Bradhurst, 1 Paig. 331; Kendall *v.* Russell, 3 Sim. 424; Horton *v.* Cook, *sup.*; Wilson *v.* Halilley, 1 R. & My. 590; 2 Jarm. on Wills, 538–9.

24; so where the fund set apart turns out to be inadequate by a reduction of government securities: 1 Russ. 370; 10 Sim. 596. There the court considered the charge to be on the *corpus* of the estate, and to be made up out of it, notwithstanding the words, payable out of rents and profits. So it is wherever the annuitant is a purchaser, as she is here, by relinquishing her dower, &c.: 2 Hill, Ch. 15; 2 P. Wms. 19; 1 Atk. 505; 17 S. & R. 171; 10 W. 124. A like rule is always adopted in the construction of wills.

*Raybold*, contrà.—The argument assumes that an annuity was created which the grantor was personally liable for, or which could be recovered out of the estate. But that was not the meaning. It was a mere declaration how the income should be applied, viz: that if the rents were adequate, $1,000 a year should go to his widow. Certainly he never designed to charge the *corpus* of the estate to the entire disinherison of his heirs and children. The language shows this—it was payable out of the profits, and if these fell short, the parties entitled to them bear the loss.

*Feb.* 8. BURNSIDE, J.—We all concur in the report of the auditor, who has treated the subject in so lucid and correct a manner, that but little could be added to his reasoning, without weakening the argument. I therefore adopt it as the opinion of the court.

Decree reversed, and report confirmed.