Estate of Robert Howell, deceased. Appeal of Emily Howell Campbell, Bertha Howell, Edward J. H. Howell, Annie Hazen Howell, Aubrey Howell, Phœbe Howell Haines and Sidney Howell Jenks.

$$\begin{array}{ll} \overline{180} & 515| \\ 185 & 53| \\ 180 & 515| \\ f216 & {}^1535| \\ \hline 180 & 515| \\ 223 & {}^2600| \\ 223 & {}^2601| \end{array}$$

*Wills—Accumulations—Decedent's estate—Act of April* 18, 1853, P. L. 507.

When the policy of the law is violated by a direction to accumulate, no effect should be given to the intention of the testator, and the distribution should be in accordance with the statute without regard to the will; but a temporary accumulation which forms a reasonable contingent fund in anticipation of a decrease of income, whether it arise from fortuitous causes in the management of the trust or from testamentary design, may lawfully be retained.

An intent to provide for contingencies within reasonable limits may be sustained, but an intent to add the increase to a permanent fund cannot be.

Testator bequeathed to his executors " such a sum of money as will yield a net yearly income of $2,500, in trust, to pay over the whole of said net yearly income " to his wife for life, and if she should die childless then to pay $10,000 thereof to her appointee by will, and the residue to such of his nephews and nieces as should be living at her death. He left his residuary estate to a grandchild for life. The widow died without children, leaving a will whereby she disposed of the said $10,000. The executors set apart a fund to meet the annuity which produced a yearly average income in excess of $2,500. *Held*, (1) that the right to the surplus income vested as it accrued in the testator's grandchild subject to the right of the widow to have it retained by the trustees for the judicious protection of her annuity; (2) that upon the death of the widow, the surplus income which had accumulated during her lifetime, passed to the testator's grandchild.

Argued Jan. 19, 1897. Appeal, No. 499, Jan. T., 1896, by Emily Howell Campbell et al., from decree of O. C. Phila. Co.,

April T., 1884, No. 528, overruling exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of the Supreme Court.

The material exceptions to the adjudication were overruled, ASHMAN, J., filing the following opinion:

Robert Howell bequeathed to his executors "such a sum of money as will yield a net yearly income of $2,500, in trust . . . . to pay over the whole of said net yearly income" to his wife for life, and if she should die childless, then to pay $10,000 thereof to her appointees by will, and the residue to such of his nephews and nieces as should be living at her death. He left his residuary estate in trust for his grandchild for life. The widow died without issue, having first appointed the said sum of $10,000 to her executors. The question is as to the disposition of interest which has accumulated upon the trust fund. It was claimed respectively by the representatives of the widow; by the nephews and nieces, and by the residuary legatee.

Of course, the only alternative to the proposition that the testator intended to give an annuity of $2,500 is that he intended the gift of a variable sum, which was to be determined by the executors. To be entirely safe, and without any fraud whatever, they might have set apart an amount which, calculated at one per cent per annum, would realize $2,500, but which, as a matter of fact, might easily earn five times as much. In that case, if the income was the measure of the gift to the widow and not simply the pledge for her annuity, she would be entitled to $12,500 instead of $2,500 per year. The testator might have said that the retained sum must yield at least $2,500 annually, and then his intention to give his wife any excess of income beyond that limit might be plausibly argued. But he did not so say; and when he directed his executors to pay over " the whole of said net yearly income," he meant the net yearly income $2,500 of which he had just spoken.

Was the surplus income an accumulation which came under the ban of the act of 1853? The evil which the statute sought to avoid was the capitalizing of income, an evil which existed

in Carson's Appeal, 99 Pa. 325, and Grim's Appeal, 109 Pa. 391, where the donor, in one case, and the testator, in the other, distinctly directed the interest to be invested. But in this case no thought of an accumulation was in the mind of the testator, and it was equally foreign to the purpose of the executors. The latter set apart a fund of $41,729.25, which, at a lower rate than six per cent would not have yielded the annuity, and so close was their estimate that in forty years the net accumulations amounted only to $6,058.14, a yearly average of $121.16. Indeed, a deficit of $1,815.66 actually occurred. Unless the act is too rigid to bend, some play ought to be allowed to the discretion of the accountants, and a fraction of income might be retained, as a matter of prudence, to meet the contingencies of reinvestments and of temporary declines in values. These small savings, which are liable at any time to be absorbed in maintaining the fund, cannot with propriety be regarded as accumulations such as the act was intended to destroy. The case cannot be compared with McKee's Appeal, 96 Pa. 277, because there the annuity was based upon a fund which was so inordinately large that its surplus income amounted in fifteen years to $100,000. The exact point, however, has been decided. In Eberly's Appeal, 110 Pa. 95, the trust had run for fifteen years, and the accumulations were in excess of $5,000. STERRETT, J., said: "If the estate is disposed of so or in such manner that accumulations clearly beyond what may be reasonably required to fully and effectually carry out the provisions of the trust must necessarily exist, it amounts to an implied direction to accumulate. But in determining whether the excess of income over and above disbursements and expenses at any given time is an accumulation within the meaning of the statute or not, regard must be had to the trust property and the duties imposed upon the trustees. . . . Care must be taken not to strip the trustee of a contingent fund, upon which he may be required to draw to meet the exigencies of the trust." The force of this reasoning was exemplified in the case before us, when the court ordered $1,800 to be paid out of the surplus income to make good a deficit in the revenues of previous years. We think that the accumulations were not within the prohibition of the act.

To whom shall they be awarded? If they are the subject of

an intestacy, they belong to the next of kin; if they form part of the residue, they belong to the residuary legatee; if, again, they are accretions to the fund which was set apart for the annuity, they follow the ownership of the fund. We have little doubt that they fall into the residue. The residuary clause carried with it whatever had not been already given by the will; and this was true of the excess of income above $2,500 in any year. Respecting this, as the testator must have known that it would be likely to accrue, he could not have intended to die intestate.

The legacy of $10,000 bears interest from the date of death of the widow, the donee of the power. It accrued under the will of the donor of the power, and he had died many years before. It is proper to say that the demand for interest was not made before the auditing judge.

The exception on this point is sustained, and the remaining exceptions are dismissed.

*Errors assigned* were in overruling exceptions to adjudication.

*John G. Johnson*, for appellants.—There was no direction to accumulate in violation of the act of 1853 : Eberly's App., 110 Pa. 95 ; Hibb's Est., 143 Pa. 217.

The whole trust fund passed to the nephews and nieces.

*George B. Johnson*, with him *James P. Townsend*, for appellee.—The right to the surplus income vested in the appellee, as it accrued, subject only to judicious protection of the widow's right to her annuity: McKee's App., 96 Pa. 284; Washington's Est., 75 Pa. 102; Carson's App., 99 Pa. 325; Grim's App., 109 Pa. 391; Mellon's Est., 16 Phila. 323.

OPINION BY MR. JUSTICE FELL, April 12, 1897 :

The assignments of error relate to the order of the orphans' court awarding the granddaughter of the testator, who was his residuary legatee, and in case of intestacy would have been his sole heir, the accumulations of the income of a fund set apart by the executors to provide an income for life for the testator's widow. The testator died in 1856. He bequeathed to his executors "such a sum of money as will yield a net yearly income

of $2,500 in trust to place the same at interest and keep it invested . . . . and to pay over the whole of the said net yearly income " to his wife for life.   He directed that upon the death of his wife his executors or trustees for the time being should pay $10,000 of the trust fund to her appointees, and that the residue of the moneys so held by them in trust should be paid to such of the children of his brothers and sisters as might be living at the time of the decease of his said wife.   He gave the residue of his estate in trust for the benefit of his granddaughter, the appellee.

In 1860, with the approval of the orphans' court, the sum of $41,729.75 was allotted to the trustees for the benefit of the widow, and it has since been held by them.   This trust fund has been so managed that the accretions to principal are $2,604.98, and the surplus income in 1890 amounted to $7,873.80.   It was reduced before the death of the widow, in order to supply deficiencies in annual income, to $6,058.14, which is the fund now in dispute.

The will contains no direction to accumulate the income, and it indicates no intention to make accumulations in violation of the act of 1853.   The surplus resulted from prudent management, and its retention by the trustees was a wise provision to meet deficiencies during the life of the widow.   This subject is so fully and satisfactorily treated in the opinion of the learned judge of the orphans' court that its further consideration by us is unnecessary.

It is of course conceded that when the policy of the law is violated by a direction to accumulate no effect should be given to the intention of the testator, and the distribution should be in accordance with the statute without regard to the will ; but it is contended that in the distribution of accumulations which have been lawfully retained until the death of the life tenant to meet contingences the real intent of the testator with regard to them should be followed, although it would result in the increase of the trust fund by accumulations—that is, that as accumulations may be retained to provide a contingent fund, they may be added to and made a part of the trust fund from which they arise, if such is the testamentary intent.   The fault of this contention is that there can be no real intent to accumulate beyond the limits prescribed which is not an unlawful

intent. Either the testator made no provision for the excess of income that might remain after the payment of the annuity, in which event the excess would go as in case of intestacy, or must be regarded as having attempted to provide for accumulations in a manner forbidden by law.

A temporary accumulation which forms a reasonable contingent fund in anticipation of a decrease of income, whether it arises from fortuitous causes in the management of the trust or from testamentary design, may lawfully be retained. In Hibbs' Estate, 143 Pa. 224, it was said by the present chief justice: "There are two classes of cases in which the question of accumulation has been raised in this court since the passage of the act of 1853: (a) that in which the manifest purpose of the testator was to add such accumulations permanently to, and make them take the destination of, the original trust estate: Washington's Estate, 75 Pa. 102; McKee's Appeal, 96 Pa. 277; Carson's Appeal, 99 Pa. 325; Grim's Appeal, 109 Pa. 391; and (b) that in which the accumulations were intended to be temporary and in the interest of judicious management: Eberly's Appeal, 110 Pa. 95. The first came plainly within the prohibition of the statute, the second did not. The purpose of the statute was to prevent permanent accumulations, not to interfere with judicious management."

This construction, without violating the statute by permitting accumulations to be added to the principal of the fund, permits the temporary withholding of the surplus income in aid of the judicious management of the trust. As accumulation except within the limits fixed by the act is prohibited, any direction to accumulate, or any provision or plan by which it is sought to accomplish it directly or indirectly, is unlawful. There cannot be an intent to accumulate beyond the prescribed limits in order to increase the corpus of the estate, or of a trust fund carved out of it, which is not an unlawful intent. When by chance or design the income is increased to an amount in excess of present demands the surplus is retained only in order to provide for future deficiences. The intent to provide for these contingencies within reasonable limits may be sustained, but the intent to add the increase to a permanent fund cannot be. It is therefore unimportant to consider whether there was an actual intent which, if found, could not be carried into effect.

As the testator left the whole of his estate in trust and disposed of the entire income for the benefit of his widow and grandchild, there is no ground for the inference of an actual intent on his part that any of the income as income should go to his nephews and nieces during the life of the widow. They were to receive nothing until her death, and they were not themselves ascertained. An intention to provide after the death of the widow for the devolution of the whole fund, principal and accumulated income, held by the trustees to secure and protect her annuity, is within the prohibition both as to time and as to parties, and any such attempt, as was said in McKee's Appeal, supra, " is so diametrically opposed to the intent and spirit of the statute that it cannot be sustained." The right to the surplus income vested as it accrued in the testator's grandchild, subject to the right of the widow to have it retained by the trustees for the judicious protection of her annuity. The facts in this case so closely resemble those in Rhodes' Appeal, 147 Pa. 227, that in the application of the principle under consideration the cases may be considered as identical. In the opinion in Rhodes' Appeal filed in the orphans' court and adopted by this court it was said by PENROSE, J., in speaking of the distribution of surplus income which accumulated during the life of the widow: " It could not go to the residuary legatees, for their rights do not begin, nor indeed are they themselves ascertained, until the death of the tenant for life ; it could not be held in the meantime, for accumulation, directly or indirectly, is forbidden by the act of assembly, except during an existing minority and for the benefit of the minor. Necessarily therefore, not having been disposed of by the testator, it passed under the intestate law."

The order of the orphans' court is affirmed at the cost of the appellant.