## Smith Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*White, Williams & Scott, Edward Greeh, Virginia B. Wallace, Charles J. Odgers, Jr., C. L. Cushmore, Jr.,* for exceptant.

*Harry Polish,* contra.

BOLGER, J., December 9, 1955.—The settlor, Parker M. Smith, by revocable deed of trust dated July 25, 1940, transferred to his trustees preferred and common stock of Smith, Drum & Co., a Pennsylvania corporation, under certain terms and conditions. By the final amendment to the deed dated August 15, 1947, settlor provided that the income should be paid to him for life and after his death his widow should receive the sum of $10,000 out of income and the excess income, if any, and the principal of the trust upon its termination should be paid to Robert Nelson Smith, a nephew of the settlor. The stock held in this trust represents approximately a 25% interest in the company, which is a close corporation and is officered and directed largely by members of the Smith and Drum Families, including Robert Nelson Smith, settlor's nephew. The deed contains rigid restrictions upon the power of the trustees to sell the stock.

Upon the death of the settlor on April 25, 1951, the trustees filed their account which was adjudicated by Judge Shoyer, who awarded the principal to the surviving trustees for the uses and purposes of the trust as follows: income collected prior to April 25, 1951, to the executor of the deceased settlor's estate and income thereafter to the extent of $10,000 per annum to Estelle M. Smith, testator's widow, and the balance, if any, to Robert Nelson Smith.

Subsequent to the adjudication and prior to the filing of a schedule of distribution, the question arose

whether the income in the hands of the trustees in excess of the $10,000 per annum to the widow should be immediately distributed to the remainderman, or whether a reasonable amount thereof should be retained by the trustees as a contingent fund to insure that the widow would regularly receive her annuity in full. The parties could not reconcile their conflicting views which resulted in the widow filing a petition for a review of the adjudication and requesting the setting up of a contingent fund of $30,000 to provide for possible deficiencies in any one or more years. Answers thereto were filed by the trustees and by Robert Nelson Smith. The latter in his answer averred that the widow is entitled to receive an annuity of $10,000 from the annual income of the trust only when received in the particular year, and that the entire net excess income of each year becomes vested in the respondent as it accrues; that the retention of any part of the excess net income in any one year would constitute an invasion of the respondent's vested right, title and interest in it; that such retention would be an unlawful accumulation, and would be in contravention of the settlor's intention.

The learned auditing judge thereupon reopened the adjudication in order to permit the petitioner to have her day in Court on the question raised by the pleadings. The widow asked that future excess income be accumulated to provide the specified amount of reserve. In a supplemental adjudication following the hearing on the merits, the learned auditing judge granted the widow's petition and directed the trustees to set up a total reserve of $15,000 by accumulations from one-half of the annual excess income thereafter. Robert Nelson Smith, settlor's nephew, thereupon filed exceptions.

The dispositive provision of the deed, section 2,

provides that the trustees shall pay to settlor's widow "only out of the said net income" the sum of $10,000 per annum during her widowhood and to pay the balance of said net income, if any, and upon her death or remarriage, the whole thereof to Robert Nelson Smith. There is no express provision for payment of deficiencies in income whether out of future dividends or from principal, nor does there appear to be any direction to the contrary.

The present award was based upon the following facts and conclusions. This trust is evaluated at $200,-000 and the widow is forty-six years of age. The corporate dividend record has been excellent. However, the common stock in the trust is a minority interest and the restrictions upon the power of the trustees to sell it may or may not imperil the purposes of the trust since the trust res will stand or fall with the fate of the corporation. The majority of the directors and officers of the corporation are members of the Drum and Smith Families who, without doubt, receive other forms of return from the corporation including Robert Nelson Smith, the exceptant, who is presently Vice President at a salary of $12,500 a year and who has already received $5,600 per year from the excess dividends of the trust. He also has a vested interest in remainder of the principal of the trust. The widow is not a director, officer or employe of the company. Harry S. Drum, one of the surviving trustees, possesses a veto power over the sale of the trust res and is independently a director of the company. It is not without the realm of possibility that the demands of the corporate management will result in a radically different policy in the future which would result in small or no dividends for one or more years, which might deprive the widow of part or all of her $10,000 for that year, then to be followed by large dividends

in one or more years from which the widow would receive no more than her $10,000 annually. All of these elements are in addition to the usual risks to which minority stockholders in a close corporation frequently and unhappily are exposed. These unusual hazards attached to the widow's interest are such that her interest should be protected if it is legally possible to do so.

The exceptant contends that the settlor's benefaction to him was to serve as an incentive for him to remain with the business and that his vested interest in excess income is no less than that of the widow in her right to $10,000 per year. There are several flaws in this reasoning.

This is an existing trust wherein the extent of the rights of the widow and of the nephew are determined by the intention of the settlor as expressed in the deed. From a reading thereof it is clear that the exceptant cannot be regarded as the primary object of the testator's bounty, the settlor's widow alone occupying that position, and therefore every intendment must be made in her favor. Her right is superior to that of the exceptant not only respecting the priority of payment, but she has the additional vested right enunciated in Howell Est., 180 Pa. 515. There the Court said, p. 521: "The right to the surplus income vested as it accrued in the testator's grandchild, [residuary legatee], *subject to the right of the widow [life tenant] to have it retained by the trustees for the judicious protection of her annuity.*" (Emphasis supplied.) Since trustees have the power to judiciously accumulate such a reserve, a fortiori, this Court has the power to direct these trustees to do so in the instant case.

In the trust in Reed's Estate No. 1 and No. 2 respectively, 236 Pa. 572 and 578, there was a direction

to pay $8,000 per year from income to testator's son, Lloyd, for life, with succeeding gifts of income to others. Lloyd never received in any one year as much as $8,000. However, upon his death there existed surplus income which his estate claimed. The Court held p. 577: "We take the general rule to be—it is at least one resting on our own and other authorities, Rudolph's App., 10 Pa. 34; Stewart v. Chambers, 2 Sandford Ch. 382,—that where the income out of which an annuity is to be paid fails in any year or years the arrearages on the annuity are to be paid out of subsequent accumulations, unless there is a plain intent expressed in the will to the contrary." The Court found no expressed intention in the will to the contrary and accordingly awarded the surplus to Lloyd's estate. Although the Court in the cited case incorrectly classifies Lloyd's gift as an annuity, in terms it was a specific sum payable out of income the same as in the instant case.

The learned hearing judge was not posed with the problem presented in Reed's Estate (supra), and neither are we now faced with it because there has been no dearth of income to date. However, that does not mean that there is any guarantee that there will be no such question in the future. It was to forestall the possibility of such contingency, in which case the parties would again have to apply to this Court to thresh out the interpretation of the will, that the learned auditing judge has patently acted. His action we conclude is justified and is, therefore, affirmed.

The setting up of a reasonable reserve in such contingencies is not to be regarded as offending the rule against accumulations: Howell Estate (supra), Sinnott's Estate, 310 Pa. 463. While apparently not applicable to this case, we find this view prevailing in the Estates Act of April 24, 1947, P. L. 100, sec. 6,

20 PS, §301.6 entitled "Income accumulations—when valid" which provides: "No direction or authorization to accumulate income shall be valid except: (1) Judicious management. For the purpose of creating a temporary reserve of a reasonable amount for administration of the trust, or periodic distributions in specified amounts, or the needs of a beneficiary;"

The widow petitioner prayed the learned auditing judge to direct accumulations to the extent of $30,000. The latter found that the request was excessive, but directed the setting up of a reserve of $15,000 by accumulations to be taken from one-half of the future annual excess income. Under all of the facts of the case, we conclude that the amount of the reserve is not only reasonable, but modest, and it is therefore sustained.

The exceptions are dismissed and the supplemental adjudication confirmed absolutely.