## Smith Trust.

Argued May 2, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas Raeburn White,* with him *White, Williams & Scott,* for appellant.

*Harry Polish,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 25, 1956:

The basic question presented by this appeal is whether an annual gift to his widow by the settlor in a trust instrument was cumulative.

The important facts are not in dispute and may be summarized from the opinion of the court below as follows: The settlor, Parker M. Smith, by an inter vivos revocable deed of trust, transferred to his trustees preferred and common stock of Smith, Drum & Co., a Pennsylvania corporation engaged in the business of manufacturing textile dyeing and finishing machinery. In its final form this trust provided that the income should be paid to settlor during his lifetime and after his death his widow, Estelle M. Smith, should receive the sum of $10,000 per annum out of income, and the

excess income, if any, and the principal of the trust upon its termination, should be paid to Robert Nelson Smith, a nephew of the settlor and the appellant herein. The dispositive provision of the deed of trust, section 2, provides: "Upon the death of the Settlor, if and only if the Settlor's wife, Estelle M. Smith, shall not elect to take against the Settlor's will, the said Trustees shall pay, only out of the said net income, the sum of Ten thousand Dollars ($10,000.) per annum to said Estelle M. Smith, wife of the Settlor, during her widowhood, and pay the balance of said net income, if any, and upon the death or remarriage of Settlor's said wife, the whole thereof to Robert Nelson Smith, nephew of the Settlor.". The stock held in this trust represents approximately a 25% interest in the company, which is a close corporation whose officers and directors are members of the Smith and Drum families, including the appellant who is vice president. The deed of trust contains rigid restrictions upon the power of the trustees to sell the stock. There is no express provision for the payment of deficiencies in income out of principal.

The settlor died in 1951. Subsequently the question arose among the parties in interest as to whether the income in the hands of the trustees in excess of the $10,000 per annum payable to the widow should be immediately distributed to the remainderman, or whether a reasonable amount thereof should be retained by the trustees as a contingent fund to insure that the widow would regularly receive the annual amount provided for her. The parties could not resolve their conflicting views which resulted in the widow filing a petition in the Orphans' Court of Philadelphia County to decide this question. She requested that $30,000 be set aside out of all the excess income as a contingent fund to provide for possible deficiencies in any one or more years. After a hearing on the merits, the auditing judge

granted the widow's petition in part, and directed the trustees to set up a total reserve of $15,000 by accumulations of one-half of the annual income in excess of $10,000 thereafter distributable, so as to provide for possible deficiencies in future years. The exceptions of the appellant, Robert Nelson Smith, were dismissed by the court en banc which confirmed the adjudication of the auditing judge. This appeal followed.

Whether surplus income from a trust fund may or should be accumulated to meet anticipated future deficiencies or emergencies depends primarily upon whether such was the intention of the creator of the trust as expressed or implied in the trust instrument. Similarly the question of whether the trustee of a so-called "annuity trust" should apply the surplus income of one year to make up deficiencies in previous years depends upon the intent which the settlor has expressed upon that subject: Bogert, Trusts and Trustees, §813; Scott, The Law of Trusts, §128.7. In Pennsylvania the law is clear that such an intent is to be presumed unless the opposite is expressly stated. In the leading case of *Reed's Estate (No. 1)*, 236 Pa. 572, 85 A. 15, testatrix left the residue of her estate in trust to pay out of net income the sum of $8,000 per annum to one son for life, and if the income were sufficient, to pay a like sum to a second son for his life. During the first son's lifetime, the income never equaled $8,000 a year, but after his death a large surplus arose. This Court held that no part of the surplus fund or the annual income thereafter accruing could be claimed by the second son until the difference between what the first son had received and what he would have received had the income each year been as much as $8,000, shall have been paid to the first son's estate. We said at p. 577: ". . . We take the general rule to be—it is at least one resting on our own and other authorities, Rudolph's App. 10 Pa. 34;

Stewart v. Chambers, 2 Sanford Ch. 382,—that where the income out of which an annuity is to be paid fails in any year or years the arrearages on the annuity are to be paid out of subsequent accumulations, unless there is a plain intent expressed in the will to the contrary. . . .". While the gift to the first son in *Reed's Estate* was not an annuity in the strict legal signification of that term, *MacMackin Estate*, 356 Pa. 189, 51 A. 2d 689, in terms it was a specific sum payable out of income the same as in the instant case.

Appellant, while accepting the rule as laid down in *Reed's Estate* as a correct statement of the law, finds such an expressed intent to the contrary in the instant case from the fact that here the deed of trust disposes of the excess income over the amount given to the widow. But in practically all wills and trusts where a gift of a certain sum is carved out of income, there is an express disposition of surplus income. If we adopt appellant's view that the mere disposition of surplus income prevents such a gift from being cumulative, it would virtually destroy the very rule enunciated in *Reed's Estate*. Furthermore, a reading of the entire will in that case shows that the testatrix disposed of all the excess income, as is very generally done. See also *Rudolph's Appeal*, 10 Pa. 34, relied on in *Reed's Estate*, where it was held that the annuitant was entitled to the arrearages out of income accruing during subsequent years, even though the trust gave all the residue of the income to a third party. Appellee, being the widow of the settlor, was a primary object of his bounty, and certainly one of the main purposes he had in mind in creating this trust was to provide her with an assured, suitable income.

There is no doubt that trustees may hold temporarily, without violating any statutory direction against accumulations, a certain amount of the surplus income

in aid of the judicious management of a trust and to provide for future contingencies, within reasonable limits: *Howell's Estate*, 180 Pa. 515, 37 A. 181; *Sinnott's Estate*, 310 Pa. 463, 165 A. 244; *Sternberger's Estate*, 121 Pa. Superior Ct. 50, 182 A. 723. Cf. Estates Act of 1947, April 24, P. L. 100, §6 (1), 20 PS §301.6. The gift to the widow being cumulative and a charge upon the total net income of the fund, judicious management of the trust requires the trustees to retain a reasonable amount of the excess income to meet possible deficiencies in the future. The right of the life tenant to such an accumulation was recognized by this Court in *Howell's Estate*, supra, at p. 521: ". . . The right to the surplus income vested as it accrued in the testator's grandchild [residuary legatee], subject to the right of the widow [life tenant] to have it retained by the trustees for the judicious protection of her annuity. . . .". Since the trustees have the power to judiciously accumulate such a reserve, of course, the Orphans' Court has the power to direct them to do so for the protection of the widow.

Appellant does not contend that a fund of $15,000 to be collected from one-half the excess income, as provided by the decree of the court below, is excessive. This is largely a matter within the discretion of the Orphans' Court which we think has been wisely and properly exercised.

Judgment affirmed at appellant's cost.