## Harrison Estate

694

*High, Swartz, Roberts & Seidel,* by *Victor J. Roberts* and *Aaron S. Swartz, 3rd; Dechert, Price & Rhoads,* by *Isaac H. Clothier, 4th,* for accountants.

TAXIS, P. J., April 30, 1965. — . . . The reason for the filing of the present account is to enable the trustees to request this court, pursuant to section 802 of the Fiduciaries Act of April 18, 1949, as amended, to partially terminate this trust by the setting aside of a fund, the income from which will be sufficient to pay the annuity to Mrs. Loutfallah and to permit the trustees to distribute the excess principal pursuant to decedent's will with respect to distribution of trust principal upon Mrs. Loutfallah's death, that is in the same manner as the trust estates for his children in his will.

The account, as filed, shows a corpus of principal and income of $689,273.23, but shows a market value on a reappraisement as of January 15, 1965, of $1,552,246.-62.

The transfer inheritance tax has been paid but, should any portion pass to collateral heirs, additional tax will become due.

Decedent died July 30, 1927, leaving a will and one codicil dated July 7, 1925, a codicil dated November 17, 1926, and a codicil dated February 16, 1926, all of which have been duly probated.

In article fifth of his will, as modified by his codicil dated April 27, 1927, decedent directed his trustees ". . . to set aside a sufficient capital sum . . . to produce a net income of Twenty Thousand Dollars ($20,-000) per annum, and to pay such net income in quarterly payments to Marie Gibson Harrison (now Loutfallah) . . . for and during the term of her natural life. . . ."

Upon her death, decedent provided: ". . . the principal sum so set aside . . . shall be divided equally among the estates hereafter created in trust for the benefit of my four children".

The sole purpose of this trust is to provide the stipulated annuity for Mrs. Loutfallah during her life. Mrs. Loutfallah was born on May 26, 1879, and is thus nearly 86 years old. Although she is mentally incompetent, Pier Gherini, Esq., her duly appointed conservator, has indicated that his ward is presently in relatively good health.

Since the last accounting of this trust in March 1962, the market value of the trust assets has increased approximately $300,000 to a total approximate value of $1,500,000.

The trust's total income annually is approximately $53,400, which is $33,400 more than is necessary to pay the annuitant her stipulated annual sum. As a consequence, the vested remainder interests, together with the accountants, believe that the corpus is approximately $500,000 in excess of that which the accountants believe is necessary to assure payment from net income to Marie Gibson Loutfallah of the $20,000 annual sum specified by decedent in his will. This has given rise to the request to this court to terminate this trust in part, to the extent that principal is not necessary to protect Mrs. Loutfallah's annuity interest.

The accountants suggest that securities having a market value of $1,000,000 will be more than sufficient

to produce the required net income. Since the trust corpus greatly exceeds $1,000,000, the accountants suggest that the excess be distributed to the beneficiaries of the trust estates created by decedent in his will for his children.

The names of all persons having an interest in this trust, vested or contingent, the nature of their interests and how derived are set forth in the petition for adjudication, and the court has been assured that all parties have had notice of the request for partial termination as described above.

Section 802 of the Fiduciaries Act of 1949 gives this court the power to partially terminate a trust in these circumstances and to exonerate and discharge ". . . such portion of the real and personal property" in the trust charged with this annuity as to the court may seem beyond the amount requisite for providing a sufficient continuing security for the payment of the charge. Section 802 is applicable and does not disturb vested rights created before January 1, 1950, the effective date of the Fiduciaries Act of 1949, for the reason that it is not one of those sections cited in section 105 of that act as one of the enumerated sections excluded from retroactive application.

The court is convinced that the proposal of setting aside $1,000,000 to support this annuity for Mrs. Loutfallah, will be more than sufficient security for the same. The rate of capitalization would be two percent, which offers greater protection than three percent recognized as customary and as reflected in Bright Estate, 16 D. & C. 2d 620, or two and one-half percent, as allowed in Friedheim's Estate, 42 D. & C. 482.

The proposal of the accountants is as follows: The trustees intend to keep the fixed income securities, bonds and preferreds, plus the common trust funds. Altogether, these have a combined value of $470,071. They constitute only 31.3 percent of the present fund,

yet they should provide $19,688 of the required $20,000 annuity. The balance of the corpus to be retained, amounting to $529,929, wil be made up of 51.4 percent of the present common stock holdings. If the same percentage is applied to the $33,726 of common stock income, the common stocks retained should produce additional trust income of $17,335 annually. Thus, after the proposed principal distribution, as suggested by the accountants, the trust may well have annual income of $37,023, nearly double the amount required. The court has studied the proposal of the accountants, together with the memorandum of law which has been submitted, approves the same and the awards hereinafter directed to be filed and made are consistent with this approval.

Pier Gherini, Esq., who is the conservator of the person and estate of Marie Harrison Loutfallah, has filed with the court his statement that "He has no objection to the granting of the petition filed on behalf of Mary De Forest Geary and R. Schuyler Lippincott, provided assets in the sum of $1,000,000 are retained in trust as contemplated in said petition, and provided further that in the event there is insufficient income to pay the sum of $20,000 per annum to Marie Gibson Harrison Loutfallah, that the trustees be directed to invade the principal of said trust to the extent necessary to insure the payment of $20,000 per annum to Marie Gibson Harrison Loutfallah as provided in paragraph Fifth of the last will and testament of Alfred C. Harrison, deceased".

Section 802, in part, provides:

"When an annuity is not restricted by the will or trust instrument to the income of the property charged with its payment, the court may authorize the payment of the annuity from the principal of the property set apart to secure its payment, should income at any time prove insufficient."

In the present trust instrument, decedent had directed the trustees to set aside "a sufficient capital sum ... to produce a net income" of $20,000 a year. It would seem to the court that the language used by this decedent is a restriction to income and that, by this language, decedent intended only income be used for this annuity. However, there is an alternative available to these accountants sufficient for the adequate protection of the annuitant, for if the trust income should decline so as to alert the trustees to possible deficiencies, the trustees can retain surplus income as a reserve against future deficiencies. In Smith Trust, 385 Pa. 416, at page 420, the Supreme Court has very plainly said that "There is no doubt that trustees may hold temporarily, without violating any statutory direction against accumulations, a certain amount of the surplus income in aid of the judicious management of a trust and to provide for future contingencies, within reasonable limits." This is adequate assurance to the conservator for the protection of his annuitant's interest.

And now, April 30, 1965, this adjudication is confirmed nisi.