[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 21, 1989, the plaintiff, Ralph DeNitto, filed a complaint seeking to recover for the alleged breach of an insurance contract by the defendants, Transamerica Insurance Company (Transamerica), and William W. Woods Associates, Inc. (Woods), insurance brokers and agents.
On May 17, 1990, the plaintiff filed a five count revised complaint containing the following allegations. On April 27, 1989, the plaintiff applied to Transamerica for a motor vehicle insurance policy through its assigned risk plan. The application was prepared by Woods, and a policy was subsequently issued to the plaintiff. Pursuant to the terms of the policy, the plaintiff was required to pay the premium in installments ($246 in advance and five installments at $150 each).
When the plaintiff applied for the policy, he was residing in Trumbull. In July 1987, the plaintiff moved to Stratford. The plaintiff alleges that he advised Woods of the change of address, and Woods failed to forward this information to Transamerica.
In July 1987, the plaintiff defaulted on an installment payment and Transamerica sent a notice of cancellation to the plaintiff's Trumbull address. Shortly thereafter, Woods went to the plaintiff's place of business and the plaintiff made the payment directly to Woods. Woods subsequently forwarded the payment to Transamerica and, as a result, cancellation of the plaintiff's policy was avoided.
In October 1987, the plaintiff again defaulted on his payments, and Transamerica mailed a second notice of cancellation to the plaintiff's Trumbull address. The notice stated that the plaintiff owed two installments, and that if Transamerica did not receive these payments by October 30, 1987, his policy would be cancelled. Once again, Woods visited the plaintiff at his place of business, and advised him that payment was due. At this time, two CT Page 10796 installments were due, and the plaintiff alleges that Woods failed to communicate this fact to him. The plaintiff then tendered a check to Woods for one installment payment. The plaintiff also gave Woods a second check at this time, but this check was for the purpose of adding collision coverage to the policy. However, the plaintiff failed to remit the second installment prior to October 30, 1987. As a result, Transamerica terminated the plaintiff's policy due to nonpayment of the premium.
On November 7, 1987, the plaintiff's automobile was stolen. The vehicle was subsequently recovered, but it was damaged beyond repair. The plaintiff then filed a claim with Transamerica, which was adjusted for $12,214.38. The plaintiff was subsequently advised that his policy had been cancelled effective October 30, 1987, and his claim was denied. On December 23, 1987, Transamerica issued a check to the plaintiff for the return of the unearned premiums. The plaintiff did not negotiate this check.
The first count of the plaintiff's revised complaint alleges that Transamerica acted in bad faith in breaching its implied contractual obligation to the plaintiff. The second count asserts a breach of express contract claim against Transamerica. In the fifth count, the plaintiff asserts an unfair trade practices claim against Transamerica pursuant to General Statutes 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The third and fourth counts of the revised complaint respectively allege negligence and breach of contract claims against Woods, and are not relevant to this motion.
Transamerica has now filed a motion for summary judgment (#123) on the first, second, and fifth counts of the plaintiff's revised complaint, along with the affidavit of its underwriting manager and the following documentary evidence: (1) a copy of Transamerica's personal automobile insurance policy; (2) a copy of the notice of cancellation which was mailed to the plaintiff; and (3) a copy of Bulletin IC-1, which was written by the Insurance Commissioner of the State of Connecticut. The plaintiff opposes summary judgment, and has filed his affidavit and other documentary evidence.
Practice Book 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Lees v. Middlesex Insurance Co., 219 Conn. 644, 650, CT Page 10797594 A.2d 952 (1991). A material fact is one that will make a difference in the case. Yanow v. Teal Industries, Inc., 178 Conn. 262,268-69, 422 A.2d 311 (1979). The court's function, in ruling on a motion for summary judgment, is to determine whether an issue of material fact exists, not to resolve such issues. Telesco v. Telesco, 187 Conn. 715, 718, 447 A.2d 752 (1982). The motion should be denied unless the evidence is such that no room for disbelief could exist in the minds of the jurors. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982). Because the burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion. Mingachos v. CBS Inc., 196 Conn. 91, 111, 491 A.2d 368
(1985).
The first count of the plaintiff's revised complaint entitled "bad faith" alleges that Transamerica breached its implied contract with the plaintiff because: (1) Transamerica failed to pay the agreed amount of loss to the plaintiff; (2) Transamerica's cancellation notice failed to specify the amount required to cure the plaintiff's default; (3) Transamerica's cancellation notice failed to comply with General Statutes 175 (now 38a-343) because it was not sent to the plaintiff by certified or registered mail, return receipt requested; (4) Transamerica retained the plaintiff's premium payments while simultaneously denying the plaintiff coverage; and (5) Transamerica's procedures failed to comply with public policy as set forth in Insurance Commission Bulletin IC-1.
Transamerica argues that a notice of cancellation is effective if it is based on nonpayment, and the plaintiff's nonpayment is not an issue of fact. Transamerica contends that its notice of cancellation was proper in all respects, and that it specified that the plaintiff had to pay two installments by October 30, 1987 in order to avoid cancellation. Transamerica also argues that an Insurance Commission Bulletin does not create "law" with which Transamerica must comply.
The plaintiff argues that genuine issues of material fact exist as to whether Transamerica waived its rights under the policy, and also whether Transamerica is estopped to claim that the plaintiff's insurance policy was effectively cancelled prior to the date that the plaintiff filed his claim. The plaintiff bases his waiver and estoppel arguments on the following allegations: (a) that Transamerica accepted and retained partial payments made by the plaintiff; (b) that Transamerica recognized the validity of the policy because it adjusted the plaintiff's loss after the policy CT Page 10798 was purportedly cancelled; and (c) that the plaintiff relied on both a course of dealing with, and representations made by defendant Woods, an insurance broker.
General Statutes 38a-342(a) provides in pertinent part that "[a] notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons: (1) Nonpayment of premium . . ."
The affidavits and documents submitted by the parties agree on the following facts: (1) that two installments were due prior to October 30, 1987 in order to avoid cancellation; (2) that the plaintiff tendered one installment prior to that date; (3) that as a result, Transamerica cancelled the plaintiff's policy; and (4) that plaintiff's claim, filed after his auto was stolen on November 7, 1987, was denied by Transamerica.
Thus, sufficient undisputed facts exist to permit Transamerica's motion for summary judgment based upon its cancellation of the plaintiff's policy to be granted, unless the plaintiff's arguments based on waiver and estoppel raise a genuine issue of material fact with respect to Transamerica's power to cancel his policy.
General Statutes 38-343 provides that: "(a) No notice of cancellation of policy . . . may be effective unless sent, by registered or certified mail or by mail evidenced by a certificate of mailing, . . . provided where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given." General Statutes 38a-344
provides that: "Proof of mailing by certified mail, return receipt requested, notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice."
The affidavit of Transamerica's underwriting manager states that a formal notice of cancellation was sent to the plaintiff's Trumbull address on October 8, 1987, and a certified mail label is attached to its memorandum. The notice states that the plaintiff's policy would be cancelled unless Transamerica received two installments by October 30, 1987. In his affidavit, the plaintiff states that he did not receive the notice of cancellation because it was mailed to his former Trumbull address, and at the time of mailing, he was residing at his new Stratford address. The plaintiff also states that Woods failed to communicate this change CT Page 10799 of address to Transamerica.
The plaintiff's affidavit fails to raise any genuine issues of material fact with respect to Transamerica's notice, as General Statutes 38a-344 only requires an insurer to send such notice "to the named insured at the address shown in the policy," which was in Trumbull. Woods' alleged failure to forward information pertaining to the plaintiff's change of address does not raise a genuine issue of material fact, as such failure does not affect Transamerica's duty to notify the plaintiff pursuant to the General Statutes. Therefore, Transamerica's notice of cancellation was sufficient as a matter of law.
The parties' affidavits also establish the following further facts: (1) that Transamerica cancelled the plaintiff's policy on October 30, 1987; (2) that Transamerica cancelled the policy because the plaintiff failed to tender an installment payment prior to October 30, 1987; and (3) that Transamerica returned all unearned premiums, including a check tendered by the plaintiff for the purpose of adding collision coverage, on December 23, 1987.
The insurance policy in question provides in pertinent part that: "If this policy is cancelled, [the plaintiff] may be entitled to a premium refund. If so, we will send you the refund. . . . However, making or offering to make the refund is not a condition of cancellation."
Under such a provision, "the effectiveness of the cancellation does not depend upon the refund of unearned premium." Westmoreland v. General Accident F. L. Assurance Corp., 114 Conn. 265, 271,123 A.2d 623 (1957). "The sole effect of the provision requiring the return of a portion of the premium is to create an indebtedness of the insurer to the insured." Id. In the present case, the policy provides that a refund of the unearned premium is not a condition precedent to cancellation of the policy. "If such an adjustment is not a condition precedent, it certainly is not a condition subsequent in the sense that failure to adjust as soon as practicable after cancellation has become effective will reinstate the policy." Id., 272.
Transamerica's retention of the plaintiff's unearned premiums until December 23, 1987 does not raise a genuine issue of fact with respect to the terms of the policy, but might raise such an issue with respect to the plaintiff's waiver and estoppel arguments. CT Page 10800
Insurance Commission Bulletin IC-1 addresses the issue of cancellation of insurance policies due to "unfavorable underwriting factors." The present case addresses the issue of cancellation due to nonpayment of premiums, and the relevant law on this subject is in statutes and judicial decisions, not bulletins issued by the Insurance Commission. Thus, this bulletin is irrelevant to the issue of the legality of Transamerica's cancellation of plaintiff's policy, and raises neither questions of fact nor questions of law with respect to this case.
The plaintiff argues that Transamerica waived its right to terminate the plaintiff's insurance policy because it accepted and retained the plaintiff's partial payment of premiums. In response, Transamerica argues that the return of unearned premiums is not a condition precedent to cancellation.
Generally, an insurer is not required to accept partial payment of fixed premiums. 6 Couch on Insurance 2d 31:1 (1985), citing Griffin v. Aetna Life Ins. Co., 487 F. Sup. 755 (D.C.N.D. 1979), aff'd without opinion, 624 F.2d 1108 (8th Cir. 1979), and Panizzi v. State Farm Mut. Auto Ins. Co., 386 F.2d 600 (3d Cir. 1967), cert. denied, 392 U.S. 937, 88 S.Ct. 2308,20 L.Ed.2d 1395 (1967). "Where the policy in unambiguous language calls for payment of a specified premium at a given time, part payment thereof at such time does not of itself keep the policy in force." Id.
A waiver of any condition of an insurance policy may be effected by express agreement or conduct of the insurer from which a waiver may be implied. Andover v. Hartford Accident Indemnity Co., 153 Conn. 439, 445, 217 A.2d 60 (1960).
"Waiver is the intentional relinquishment of a known right. . . . In the law of insurance, a breach of condition or warranty, out of which avoidance of the policy may be claimed, does not operate automatically to forfeit or avoid the policy, but sets in operation a right of choice. The insurer may elect either to continue or to terminate. . . ." Id. "[A]cceptance or retention of premiums on a policy of insurance with knowledge of its breach, will constitute a waiver of the breach implied from the conduct of the insurer through the application of the principles of estoppel. The mere retention or acceptance of the premium without knowledge of the breach, cannot constitute such waiver or estoppel." Mishiloff v. American Central Insurance Co., 102 Conn. 370, 380, 128 A. 33
(1925). CT Page 10801
The parties' affidavits and documentary evidence establish the following facts. The plaintiff was in default on two installments; one of which was due on September 28, 1987, and one which was due on or before October 30, 1987. Transamerica's notice of cancellation stated that both payments had to be tendered on or before October 30, 1987, or else the plaintiff's policy would be cancelled. The plaintiff tendered one installment, which was received by Transamerica on October 13, 1987. When the second installment was not received by October 30, 1987, Transamerica cancelled the plaintiff's policy. Transamerica refunded the unearned premiums to the plaintiff on December 23, 1987.
Transamerica's acceptance of the plaintiff's partial payment does not raise any genuine issues of material fact. Since the plaintiff was required to pay two installments in order to avoid cancellation, the installment received by Transamerica on October 13, represented a partial payment which, by itself, was not enough to keep the policy in force. At the time that Transamerica accepted the October 13 installment, it could not have had knowledge of the plaintiff's breach, as the plaintiff had until October 30 to pay the second installment. When the plaintiff failed to tender the second installment by October 30, Transamerica cancelled the plaintiff's policy.
Although Transamerica retained the plaintiff's unearned premiums until December 23, 1987, this does not amount to a waiver by Transamerica, as under the terms of the policy, returning the unearned premiums was not a condition precedent to cancellation of the policy. See Westmoreland v. General Accident F. L. Assurance Corp., supra, 271-72.
It appears that no genuine issues of material fact exist, and that a waiver cannot be implied from Transamerica's acceptance of the plaintiff's partial payment.
The plaintiff argues that Transamerica waived its right to cancel the policy because it adjusted the plaintiff's loss and reached a settlement figure with the plaintiff. In response, Transamerica argues that appraisal of the claim does not estop the insurer from subsequently denying the claim.
"A waiver of any condition of an insurance policy may be effected by express agreement or conduct of the insurer from which a waiver may be implied." Andover v. Hartford Accident Indemnity CT Page 10802 Co., supra, 445. An example of a situation where a waiver arises is when an insurer settles a case "voluntarily and with knowledge of facts indicating noncoverage. . . ." Employers Mut. Liability Ins. Co. v. Sears Roebuck, 621 F.2d 746 (5th Cir. 1980).
"The mere sending of an adjuster by [the insurer] . . . to ascertain the amount of loss in response to a notification does not constitute a waiver of a provision in the policy [which calls for suspension of the policy due to the insured's nonpayment of the premium] in the absence of any statement or promise [by the insurer] relating to the payment of the loss sustained." 6 Couch on Insurance 2d 32:332 (1985). An adjustment of loss made during the time that a policy is suspended does not create an estoppel, unless the making of such adjustment subjects the insured to loss, trouble, inconvenience or expense. Id. An example of "loss or expense" is where the insured provides the adjuster with the "means to get to and from [the insured's] property." Aetna Ins. Co. v. Daggett Yancy, 177 Ark. 109, 5. S.W.2d 719, 722 (1928). An example of unnecessary "expense" and "trouble" is when the insurer's "affirmative conduct for several months thereafter, induce[d] the [insured] to believe that it would not insist on a forfeiture because of . . . nonpayment" and caused the insured "unnecessary expense" and "unnecessary trouble while acting under the belief that the company intended to settle" the insured's claim. American Life Ass'n v. Vaden, 165 Ark. 86, 261 S.W. 320
(1924).
The parties' affidavits establish that: (1) the plaintiff's policy was cancelled due to nonpayment of premiums on October 30, 1987; (2) the plaintiff's auto was stolen on November 7, 1987; (3) the plaintiff promptly filed a claim with Transamerica; (4) Transamerica's adjuster appraised the plaintiff's loss and valued it at $12,214.38; and (5) one day after the adjuster met with the plaintiff, Transamerica denied the plaintiff's claim because his policy had been cancelled on October 30, 1987.
The plaintiff in the present case therefore, was not subjected to any "loss, trouble, inconvenience or expense" in the settlement of the claim, nor was there any "affirmative conduct" on the part of Transamerica which would induce the plaintiff to believe that his policy would not be cancelled, as the plaintiff's claim was promptly denied one day after Transamerica's adjuster negotiated with the plaintiff. Transamerica's conduct with respect to the adjustment does not create any genuine issues of material fact, and does not amount to conduct which would indicate a waiver of its CT Page 10803 rights.
The plaintiff also argues that Transamerica is estopped to claim lack of coverage on the date of the plaintiff's loss because the plaintiff relied on a course of dealing with defendant Woods, the insurance broker who procured the insurance policy for the plaintiff. The plaintiff also argues that Woods made various representations to him regarding the number of payments that were required in order to keep the policy in effect. In response, Transamerica argues that there was no course of dealing upon which the plaintiff could rely. Transamerica also argues that the plaintiff knew that two payments had to be made on or before October 30, 1987 in order to keep the policy in effect.
"To create an estoppel, facts must be present and known to the insurer, and have been relied upon by the insured to his injury." Mishiloff v. American Central Ins. Co., supra, 380. See also 6 Couch on Insurance 2d 32:269 (1985). "If the insured has not relied on the representations of the insurer, it is apparent that he has not been misled thereby." "An insured cannot claim an estoppel where he himself knows the true facts, for in such a case, it is clear that he has not been misled by the insurer." Id.
In Zemko v. Allstate Ins. Co., 39 Conn. Sup. 206, 209-10,474 A.2d 814 (Superior Ct. 1984), the insurer denied the plaintiff's claim on the grounds that his policy had terminated for nonpayment of premium prior to the date that the plaintiff filed his claim. In that case, the plaintiff had a ten-year course of dealing with the insurer's authorized agent whereby the agent would make premium payments on behalf of the plaintiff and the plaintiff would reimburse the agent. The agent, however, died before he could pay the plaintiff's premium, and the plaintiff, while receiving a "no-fault card," never received a statement showing the amount of the premium due. In entering judgment in favor of the plaintiff, the court noted that: "[a]fter ten years of dealing in this manner [the plaintiff], having no notice to the contrary from [the insurer], was entitled to rely on this course of dealing by [the insurer's] own agent."
In Perrigo v. Connecticut Commercial Travelers Mut. Accident Assn., 101 Conn. 648, 657, 127 A. 10 (1924), the court held that the insurer's practice of accepting late payments in disregard of the terms in its by-laws created a question of fact as to custom and the right of the insured to rely thereon. CT Page 10804
The parties' affidavits establish the following facts. The insurance policy in question was issued in April, 1987. The plaintiff first defaulted on a payment which was due on June 28, 1987. Transamerica notified the plaintiff that he had to tender two installments by July 31, 1987 in order to keep the policy in effect. In July, Woods visited the plaintiff and collected two installments, which were received by Transamerica on July 28, 1987. Subsequently, the plaintiff defaulted on a payment which was due on September 28, 1987. Transamerica mailed a notice of cancellation to the plaintiff on October 8, 1987, advising him that he had to pay two installments by October 30, 1987 in order to avoid cancellation.
In October, Woods made another personal visit to the plaintiff's place of business. In his sworn deposition, the plaintiff states that Woods informed him that he was two months behind and that he should "send in one payment and another payment within a couple of weeks." However, in his affidavit, the plaintiff states that "Woods advised me that one payment would be sufficient." Transamerica received one payment on October 13, 1987. However, the plaintiff failed to pay the October installment by October 30, 1987, and as a result, his policy was cancelled.
It is clear that Transamerica did not have a custom or course of dealing with the plaintiff whereby it would accept payments that were tendered after the date stated on its notices of cancellation. Also, no "course of dealing" within the meaning of the Zemko case exists. In Zemko, the plaintiff had a ten-year course of dealing with his agent, where the agent would pay the plaintiff's premiums. Then, when the plaintiff was in default due to the agent's death, he never received notice of cancellation from the insurer. In the present case, Woods visited the plaintiff twice in six months for the purpose of informing the plaintiff that he was in danger of default. Also, the plaintiff received adequate notice of cancellation from Transamerica. Thus, no genuine issues of material fact exist which would establish a course of dealing sufficient to estop Transamerica from cancelling the plaintiff's policy.
The plaintiff's reliance argument, moreover, does not raise any genuine issues of material fact. While the plaintiff's affidavit and his sworn deposition testimony conflict with regard to the information Woods gave him in October 1987, this does not raise a genuine issue of material fact. In July 1987, the first time that the plaintiff defaulted, Woods visited the plaintiff and CT Page 10805 informed him that two payments were necessary in order to avoid cancellation. Thus, the plaintiff cannot claim reliance and estoppel when he has knowledge of the true facts, and such knowledge is sufficient to appraise him that he has no grounds to believe that he could postpone payment without risking cancellation.
No genuine issue of material fact exists as to whether Transamerica may be estopped from treating the plaintiff's nonpayment of premiums as a ground for terminating his policy.
Thus, as to the first count, no genuine issues of material fact exist as to: (1) Transamerica's refusal to honor the plaintiff's claim; (2) the sufficiency of Transamerica's Notice of Cancellation; (3) Transamerica's delay in refunding the plaintiff's unearned premiums; and (4) the effect of Insurance Commission Bulletin IC-1.
The plaintiff's waiver and estopped arguments based on: (1) Transamerica's acceptance of a premium installment payment prior to the plaintiff's default; (2) Transamerica's appraisal of the plaintiff's claim after the policy was cancelled; (3) the plaintiff's course of dealing with defendant Woods; and (4) representations that Woods allegedly made to the plaintiff also fail to raise any genuine issues of material fact and, accordingly, Transamerica's motion for summary judgment is granted as to the first count.
The plaintiff incorporated all of the facts pled in the first count into the second count of his revised complaint, and alleges that Transamerica breached its contract with the plaintiff.
Transamerica makes the same argument in support of its motion for summary judgment on the second count as it made for the first count. The plaintiff, in response, repeats its argument that genuine issues of material fact exist as to whether Transamerica either waived its rights, or should be estopped to claim that the plaintiff's insurance policy was effectively cancelled prior to the date of the plaintiff's loss.
Transamerica's motion for summary judgment is granted as to the second count of the plaintiff's revised complaint for the same reasons that it was granted as to the first count.
The fifth count of the plaintiff's revised complaint asserts CT Page 10806 a claim against Transamerica pursuant to General Statutes 42-110a
et. seq., the Connecticut Unfair Trade Practices Act (CUTPA). Claims of unfair settlement practices under CUTPA require a violation of General Statutes 38-60 et seq., the Connecticut Unfair Insurance Practices Act (CUIPA), and a "showing of more than a single act of insurance misconduct," according to Mead v. Burns,199 Conn. 651, 659, 509 A.2d 11 (1986), "isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." Id., 666. Thus, there is no violation of CUTPA where there is no violation of CUIPA, Id., 665.
In order for the plaintiff to assert a valid cause of action pursuant to General Statutes 42-110b et seq., he must allege more than one instance of unfair settlement practices on the part of Transamerica. Because the plaintiff alleges only one instance of misconduct on the part of Transamerica, the plaintiff's claim is legally insufficient, and Transamerica's motion for summary judgment is granted as to the fifth count of the plaintiff's revised complaint.
So Ordered.
Dated at Bridgeport, Connecticut this 2nd day of December, 1992.
WILLIAM B. LEWIS, JUDGE